**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AMBER FERRELL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>ORTHOTECH, LLC d/b/a SMILESET<br><br>*Defendant.* | Case No. CIV-25-330-JAR<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

<u>**CLASS ACTION COMPLAINT**</u>

1.      Amber Ferrell ("Plaintiff") brings this class action against Orthotech, LLC d/b/a Smileset ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Oklahoma Telephone Solicitation Act of 2022 ("OTSA"), Okla. Stat. tit. 15 §§ 775C.1– 775C.6.

2.      Upon information and good faith belief, Defendant routinely violates 47 C.F.R. § 64.1200(c) and, in turn, 47 U.S.C. § 227(c)(5) and Okla. Stat. tit. 15 §§ 775C.1–775C.6. by delivering, or causing to be delivered, more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without prior express invitation or permission required by the TCPA and the OTSA.

**PARTIES**

3.      Plaintiff is a natural person residing in this District.

4.      Defendant is a limited liability company headquartered in West Palm Beach, Florida.

1

**JURISDICTION AND VENUE**

5.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

6.      This Court has specific personal jurisdiction over the Defendant and venue is proper because it sent telemarketing calls into this District.

**INTRODUCTION**

TCPA

7.      "Telemarketing calls are [ ] intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

8.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone

solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). Private suits can seek either monetary or injunctive relief. *Id.* This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

OTSA

9.      In 2022, Oklahoma enacted the OTSA (HEA 3168, codified at Okla. Stat. tit. 15 §§ 775C.1–775C.6) in response to widespread abuses of telemarketing and text-based solicitation.

10.      The statute mirrors and supplements the TCPA, prohibiting unsolicited text messages and calls to Oklahoma consumers without prior express written consent.

11.      The OTSA's legislative findings emphasized Oklahoma's interest in safeguarding its citizens' privacy and providing remedies for invasions of domestic tranquility caused by mass text campaigns.

12.      Like the TCPA, the OTSA authorizes $500 per violation and up to $1,500 for willful or knowing violations, and creates a private right of action for injunctive relief and damages.

13.      The OTSA explicitly covers text messages sent for commercial solicitation, reflecting legislative recognition that modern nuisance marketing is increasingly digital.

3

## PLAINTIFF'S ALLEGATIONS

14.     Plaintiff is, and has been for at least a year, the subscriber to and customary user of her cellular telephone number—918-297-XXXX.

15.     This is the Plaintiff's residential number.

16.     This number is not associated with a business and used by the Plaintiff for personal purposes.

17.     Plaintiff had registered his number on the National Do Not Call Registry for at least 30 days prior to receiving the messages at issue.

18.     Despite this, beginning in or about August 2025, Defendant sent at least three unsolicited text messages to Plaintiff which are provided below:







19.    The purpose of the subject text messages was to advertise and market Defendant's orthodontic services.

20.    Plaintiff did not give Defendant prior express consent or permission to deliver, or cause to be delivered, advertisement or marketing text messages to telephone number 918-297-XXXX.

21.    Plaintiff did not request information or promotional materials from Defendant.

22.    Plaintiff suffered actual harm as a result of the subject text messages in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

23.    Upon information and good faith belief, Defendant knew, or should have known, that telephone number 918-297-XXXX was registered with the DNC Registry.

## CLASS ALLEGATIONS

24.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

25.    Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Oklahoma OTSA Subclass:**  All Oklahoma residents who (1) received a telemarketing text message from Defendant promoting its goods or services (2) without their prior express written consent (3) within the last two years.

26.     Excluded from the Classes are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

27.     **Numerosity**: The exact number of Classes members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of its agents.

28.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing messages and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

29.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

30.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a.     whether Defendant systematically made multiple telephone calls or text messages to members of the National Do Not Call Registry Class.

b.     Whether Defendant systematically made multiple telephone calls or text messages to members of the Oklahoma Telephone Solicitation Act Subclass.

c. whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class and/or the Oklahoma Telephone Solicitation Act Subclass without first obtaining prior express written consent to make the calls and;

d. whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

31. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

32. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.    Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

33.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

34.    It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

35.    Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

36.    These violations were willful or knowing.

37.    As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

38.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violation of the Oklahoma Telephone Solicitation Act (OTSA), Okla. Stat. tit. 15 §§ 775C.1–775C.6
### (On Behalf of Plaintiff and the OTSA Subclass)

39.   Plaintiff incorporates the above paragraphs.

40.   Defendant initiated, or caused to be initiated, unsolicited text messages to Plaintiff and Oklahoma Subclass members without prior express written consent.

41.   The OTSA prohibits precisely this conduct.

42.   Defendant's actions were willful and knowing, given widespread complaints, federal regulation, and obvious lack of consent.

43.   Plaintiff and Oklahoma Subclass members are entitled to statutory damages of $500 per violation, trebled up to $1,500 for willful violations, as well as injunctive relief.

## PRAYER FOR RELIEIEF

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class and the Oklahoma Subclass, respectfully requests that the Court enter judgment against Defendant for:

A.   Certification of the Classes as alleged herein;

B.   Appointment of Plaintiff as representative of the Classes;

C.   Appointment of the undersigned as counsel for the Classes;

D.   Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5) and 15 O.S. §775C.6;

E.   Attorneys' fees and costs, as permitted by law; and

F.   Such other or further relief as the Court deems just and proper.

Respectfully submitted this 15th day of September,

*/s/ Matthew D. Alison*

12

Matthew D. Alison, OBA No. 32723
233 S. Detroit Ave. STE 200
Tulsa, OK 74120
918-347-6169
matthew@iaelaw.com

Anthony I. Paronich, Subject to Pro Hac Vice
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Counsel for Plaintiff and those similarly situated*