UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER FERRELL, individually and on behalf of all others similarly situated, | Case No. 6:25-cv-00330-JAR |
| *Plaintiff*, | |
| v. | |
| ORTHOTECH, LLC d/b/a SMILESET | |
| *Defendant.* | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY, OR TRANSFER PURSUANT TO THE FIRST-TO-FILE DOCTRINE**

**Introduction**

This is not a case that belongs in Michigan. It is not a case that should be dismissed, stayed, or transferred. This is a case about an Oklahoma resident who received unsolicited telemarketing text messages in Oklahoma from a Florida company that ignored her registration on the National Do Not Call Registry. Defendant OrthoTech, LLC now asks this Court to wash its hands of those violations by hiding behind a separate case it faces in another state. But the first-to-file doctrine is not a shield against accountability. It is a discretionary doctrine of comity, not a weapon to evade liability.

The *Ferrell* action is distinct. It asserts both federal claims under the Telephone Consumer Protection Act and state-law claims under Oklahoma's

1

Telephone Solicitation Act of 2022—claims that were created by Oklahoma's legislature to protect Oklahoma residents and that have no place in a Michigan courtroom. The plaintiffs, claims, and interests are not the same. The harm occurred here, and the statute that provides redress was enacted here.

The first-to-file doctrine does not compel dismissal of a case brought by a local plaintiff asserting her own state's statutory rights. The Court should reject Defendant's effort to move this case out of Oklahoma and allow the claims to proceed in this District.

## Background

Plaintiff Amber Ferrell is a resident of Oklahoma and the subscriber of a personal cellular telephone number used for residential purposes (ECF No. 1 ¶ 13). Her number, 918-297-XXXX, has been registered on the National Do Not Call Registry for more than thirty days prior to the events at issue (ECF No. 1 ¶ 16). Beginning in or about August 2025, OrthoTech, LLC d/b/a SmileSet sent at least three unsolicited text messages to Plaintiff's number advertising its orthodontic services (ECF No. 1 ¶ 17). Plaintiff never gave consent, express or otherwise, for OrthoTech to deliver such messages (ECF No. 1 ¶¶ 18–20).

Plaintiff alleges that these texts caused an invasion of her privacy, intrusion upon her seclusion, and disruption of her daily life (ECF No. 1 ¶ 21). She brings claims under the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.

§ 227, and Oklahoma's Telephone Solicitation Act of 2022 ("OTSA"), Okla. Stat. tit. 15 §§ 775C.1–775C.6, on behalf of herself and two putative classes: a National Do Not Call Class and an Oklahoma OTSA Subclass (ECF No. 1 ¶¶ 43–44).

The OTSA, enacted in 2022, was designed to strengthen consumer protections against unsolicited text message campaigns directed at Oklahoma residents. It mirrors the TCPA in structure but imposes stricter standards for consent and expressly covers text messages as telemarketing communications (ECF No. 1 ¶¶ 28–33).

In response to this complaint, OrthoTech filed a motion to dismiss, stay, or transfer, arguing that Plaintiff's action is duplicative of *Maniaci v. OrthoTech, LLC*, pending in the Eastern District of Michigan. But *Maniaci* involves a different plaintiff, different facts, and no state-law claims. Plaintiff Ferrell is not a party in that case, and her OTSA claim—representing Oklahoma residents exclusively—is not, and cannot be, litigated in Michigan.

## Argument

### I.   The First-To-File Doctrine is Discretionary and Inapplicable Here

The first-to-file doctrine is not a jurisdictional mandate. It is an equitable principle of federal comity allowing courts to manage overlapping litigation when identical parties and claims exist. *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018). It applies narrowly to cases of the same

parties, involving the same issues. *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982).

The doctrine's purpose is to avoid duplication—not to bar distinct plaintiffs from vindicating their own rights under state law. Courts must consider not only chronology but also the parties' identities, the similarity of issues, and equitable concerns. Even when some overlap exists, exceptions abound when justice, convenience, or public interest require separate proceedings. Here, none of the three core factors supports application of the rule. The parties are different, the claims are distinct, and the issues diverge substantially. The *Maniaci* case and the *Ferrell* case share a defendant but nothing else of substance.

The Tenth Circuit frames the doctrine as a principle of comity designed to prevent duplication, inconsistent rulings, and piecemeal adjudication. See *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga.*, No. 98-4098, 1999 U.S. App. LEXIS 21630, 1999 WL 682883, at *3 (10th Cir. Sept. 2, 1999) (unpublished) (quoting *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). It "permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district," but it remains discretionary and turns on similarity of parties and issues, not mere chronology. *Buzas Baseball*, 1999 WL 682883, at *3*. And while "the preference is

for the first-filed court to decide" application of the rule, a second-filed court may consider it in the first instance. *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29-FHS, 2011 U.S. Dist. LEXIS 43704, 2011 WL 1533073, at *1 (E.D. Okla. Apr. 22, 2011) (unpublished) (citing *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296–97 (D. Kan. 2010)).

Courts typically weigh three factors: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Brannon v. Express Scripts Holding Co.*, No. 17-2497-DDC-TJJ, 2018 U.S. Dist. LEXIS 204, 2018 WL 263237, at *3 (D. Kan. Jan. 2, 2018). Even then, the remedy is discretionary (transfer, stay, or dismissal), with dismissal being rare.

Even if the Michigan filing predates this one, the first-to-file doctrine is discretionary and "permits" declination of jurisdiction only when the same parties and same issues are presented; where there is no substantial identity—as here—the rule simply does not apply. *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982).

## II. The Parties are Different and Represent Distinct Interests

The first-to-file doctrine applies only where the parties are substantially identical. OrthoTech's argument collapses that standard by focusing on some of

the Plaintiff's counsel rather than clients. The named plaintiffs are not the same; their interests are not the same; and their classes are not the same.

Plaintiff Ferrell is an Oklahoma resident representing Oklahoma consumers under Oklahoma law. Plaintiff Maniaci is a Michigan resident bringing a nationwide TCPA class action. Plaintiff Ferrell's claims are not subsumed within the Michigan action because she also asserts a state-specific OTSA subclass that includes only Oklahoma residents (ECF No. 1 ¶ 43). The Oklahoma subclass is a discrete and independent group with rights created by a distinct statute.

Defendant may cite transfer decisions applying the rule in class actions where the later case was a subset of a prior case. But those authorities turn on substantial identity of parties/issues. See, e.g., *Carrera v. First Am. Home Buyers Prot. Co.*, No. CV-11-102420-GHK, 2012 U.S. Dist. LEXIS 199507, 2012 WL 13012698, at *4 (C.D. Cal. Jan. 24, 2012); *Thompson v. Global Mktg. Research Servs., Inc.*, No. 15-3576, 2016 U.S. Dist. LEXIS 6350, 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) (different state class but same TCPA nucleus). Here, by contrast, Plaintiff pleads an Oklahoma-only OTSA subclass and a state-law cause of action absent from the Michigan matter—meaning the parties' interests are not substantially identical.

Defendant's motion ignores that class actions represent absent individuals. The relevant comparison is not whether the same lawyers filed both suits but

whether the class members and claims overlap completely. They do not. Plaintiff Ferrell's subclass cannot be adequately represented in Michigan because Oklahoma's statutory claims and remedies are absent there.

Nor does Defendant's assertion that Plaintiff is merely a "putative class member" in Maniaci change the analysis. The Supreme Court has made clear that unnamed, uncertified class members are not parties and are not bound by proceedings in another action. *Smith v. Bayer Corp.,* 564 U.S. 299, 313–16 (2011). Until certification (if ever), Plaintiff is free to vindicate her own claims—particularly her distinct OTSA claim and Oklahoma subclass that Maniaci does not and cannot encompass.

### III. The Claims and Issues are Distinct and Involve Different Legal Standards

The first-to-file doctrine requires that the issues be substantially similar. That requirement fails here for several reasons.

The *Maniaci* case is limited to the TCPA and its implementing regulation, 47 C.F.R. § 64.1200(c)(2). The *Ferrell* case includes those federal allegations but adds separate claims under the OTSA (ECF No. 1 ¶¶ 63–72). The OTSA imposes unique elements, defines consent differently, and provides independent remedies. It expressly covers text messages as "telephonic sales calls" and authorizes treble damages for willful or knowing violations. Those legal issues are exclusive to

Oklahoma law and will require separate statutory interpretation, evidence, and findings. By definition, a case that requires adjudication of Oklahoma-specific statutory elements and remedies presents different issues than a TCPA-only action in another forum.

The facts also diverge. Plaintiff Ferrell alleges conduct that occurred in Oklahoma: messages sent to her Oklahoma number, received in this District, promoting Defendant's orthodontic services (ECF No. 1 ¶¶ 14–18). She is not alleged to have received any communication in Michigan or any other state. The Michigan plaintiff's claims concern different numbers, recipients, and dates.

Finally, the relief sought differs. The OTSA provides injunctive relief and statutory damages separate from the TCPA's framework (ECF No. 1 ¶ 72). These additional remedies ensure that Oklahoma residents receive protection tailored to state law. The first-to-file doctrine does not apply where the second action seeks different relief. *Colton v. Continental Res., Inc.*, 2022 WL 17486848, at *2 (E.D. Okla. Dec. 2, 2022).

The class-action context does not change the analysis. While courts recognize the rule may apply when a later class is a subset or there is substantial overlap, they still require meaningful similarity in parties and issues. See *Chieftain Royalty*, 2011 WL 1533073, at *2; *Carrera*, 2012 WL 13012698, at *4; *Thompson*, 2016 WL 233702, at *3. Where, as here, a later-invoked forum would not

adjudicate the state-law claim at all, the overlap is insufficient to trigger the doctrine's remedial displacement—especially in the first-filed court.

### IV. Equitable and Public Interest Considerations Favor Keeping the Case in Oklahoma.

The first-to-file doctrine is equitable, and equity here favors the plaintiff. The doctrine should not be used to strip Oklahoma consumers of their local statutory remedies. OrthoTech's motion is not about efficiency; it is about avoiding a forum where the defendant's conduct can be fully examined under state law. Oklahoma has a strong interest in adjudicating claims under its own statute. The OTSA was enacted to protect residents from modern telemarketing abuses, particularly the proliferation of unsolicited text messages (ECF No. 1 ¶¶ 28–32). The State has a compelling interest in ensuring that its courts interpret and enforce that statute. Transferring this case to Michigan would frustrate that purpose.

Moreover, transfer or stay would not promote efficiency. The Michigan court is not positioned to resolve OTSA issues, and its rulings will not preclude this case. Coordinated discovery, if necessary, can be accomplished through ordinary case management procedures without depriving Oklahoma residents of their chosen forum.

Finally, Plaintiff did not engage in forum shopping. She filed in her home district, where the violations occurred. This is precisely where the case belongs.

## V.     Dismissal, Stay, or Transfer Would Cause Undue Prejudice

Dismissal is an extreme and disfavored remedy. Courts rarely dismiss under the first-to-file doctrine, especially when it would extinguish unique state claims. *Bowes v. Am. Eagle Outfitters, Inc.*, 2018 WL 8755505, at *2 (W.D. Okla. Sept. 28, 2018). Here, dismissal would deprive Plaintiff and Oklahoma consumers of their OTSA rights.

A stay would be equally unjustified. The Michigan court will not adjudicate Oklahoma law, and delaying this case would only prolong injury and uncertainty for the Oklahoma subclass. Similarly, transfer would impose unnecessary costs and burden on the plaintiff while undermining state sovereignty. Judicial economy is not advanced by moving a state-law case to a court that cannot efficiently decide it. The existence of *Maniaci* does not create a risk of inconsistent rulings because that case involves only the TCPA, while this one includes OTSA claims. The potential for overlapping discovery does not justify overriding a plaintiff's forum choice.

Federal courts often manage overlapping TCPA actions through coordination rather than dismissal. Nothing prevents the parties from coordinating discovery or settlement discussions between the two courts if efficiency so requires. But that coordination should occur voluntarily, not through involuntary transfer.

Finally, a plaintiff's choice of forum is entitled to considerable weight, particularly when the plaintiff resides in that district. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). Plaintiff chose to litigate in her home forum, where the injury occurred and where the state law claim arises. Defendant's preference for a Michigan venue does not outweigh the legitimate interest of an Oklahoma resident in pursuing her claims here.

## VI. Even If the Court Reaches 28 U.S.C. § 1404(a), the Factors Weigh Against Transfer

Even if the Court reaches Section 1404(a), the factors weigh strongly against transfer. Section 1404(a) requires the Court to consider both convenience and the interest of justice, including the plaintiff's forum choice, the convenience and availability of witnesses, the accessibility of proof, the availability of compulsory process, relative costs, local interests, docket considerations, and the benefit of having a local court decide local law. See *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). The burden rests squarely on the defendant to demonstrate that the balance of these factors strongly favors transfer, and merely shifting inconvenience from one party to another does not satisfy that burden. See *Scheidt v. Klein*, 956 F.2d 963, 965–66 (10th Cir. 1992).

None of the relevant considerations supports uprooting this case from Oklahoma.

Plaintiff's choice of forum is entitled to substantial deference. She filed suit in her home state, where she received the unwanted text messages and where the Oklahoma Telephone Solicitation Act claim arises. This is not a distant or opportunistic forum—it is the location of the injury, the conduct, and the law that governs one of her claims. Under *Scheidt*, a plaintiff's home forum is given great weight, and defendant's mere preference for Michigan cannot overcome that choice, particularly where Oklahoma has the stronger factual and legal connection to the dispute.

The convenience of witnesses and availability of compulsory process also weigh heavily in favor of keeping the case here. The Tenth Circuit recognizes that the convenience of witnesses, especially non-party witnesses, is often the most important consideration under Section 1404(a). See *Chrysler Credit*, 928 F.2d at 1516. Here, key witnesses include Oklahoma residents who received the same or similar messages, Oklahoma-based service providers involved in sending or routing those communications, and custodians of records relevant to plaintiff and subclass members. Requiring Oklahoma consumers to travel hundreds of miles to testify about text messages they received in Oklahoma would defeat the statute's purpose and invert the convenience analysis.

Access to proof and practical considerations further favor this District. In TCPA and OTSA litigation, most of the evidence consists of electronic data—text

logs, consent records, carrier routing reports, and database scrubs of the National Do Not Call Registry—making physical location largely irrelevant. Transferring the case to Michigan would not make production of this electronic evidence easier or cheaper; it would simply shift burdens and costs from defendant to plaintiff, which the Tenth Circuit has squarely rejected as a basis for transfer. See *Scheidt*, 956 F.2d at 966. Keeping the case in Oklahoma allows efficient access to proof and avoids unnecessary expense.

Relative costs also favor Oklahoma. Plaintiff and some of her counsel are located here, as are many members of the proposed OTSA subclass. Litigating in Michigan would substantially increase travel and attendance costs for those individuals while offering no corresponding benefit to the defendant, which operates out of Florida. The statute seeks to protect Oklahoma residents, and forcing those residents to litigate their state-law claims in a distant federal court would frustrate that goal and multiply the expense of securing testimony and participation.

The local-interest factor also decisively favors retaining venue. Oklahoma has a strong sovereign interest in enforcing the OTSA and in protecting its citizens from invasive telemarketing practices. The Oklahoma Legislature enacted that law to provide additional protections beyond the TCPA, recognizing the growing harm caused by text-message solicitations. That interest is at its height when an

Oklahoma plaintiff seeks redress for violations that occurred here. Federal courts applying Section 1404(a) routinely hold that local claims grounded in local statutes are best decided by the courts of the state whose law governs. See *Chrysler Credit*, 928 F.2d at 1516.

Considerations of judicial economy and docket management also weigh against transfer. The Michigan action involves only federal TCPA issues; it will not resolve the Oklahoma statutory questions presented here. Transferring this case would divide related issues between two courts, risk inconsistent rulings, and increase the complexity of coordinating discovery and motion practice. The small degree of factual overlap can be managed through informal coordination or stipulation between counsel without requiring that an Oklahoma statutory case be removed to Michigan. Keeping the case here promotes efficiency by allowing one court—the first-filed court—to resolve both the TCPA and OTSA claims together. In short, defendant cannot meet its heavy burden under Section 1404(a). Plaintiff's home-forum choice, the location and convenience of witnesses, the accessibility of proof, the cost and efficiency considerations, and the strong local interest in enforcing Oklahoma law all weigh decisively against transfer. Even if the Court were to look beyond the first-to-file doctrine, the balance of convenience and justice confirms that this case should remain in the Eastern District of Oklahoma.

## Conclusion

OrthoTech asks this Court to turn a narrow comity doctrine into a one-way exit from Oklahoma. The law does not permit it. The first-to-file rule is discretionary, not automatic; it applies only when the parties and issues substantially overlap; and even then, the first-filed court—here, this Court— decides how to proceed. This case presents an Oklahoma plaintiff, Oklahoma conduct, and a distinct Oklahoma statute protecting Oklahoma residents—claims the Michigan action will not adjudicate.

The harm happened here. The Legislature acted here. The case belongs here. The Court should deny OrthoTech's motion to dismiss, stay, or transfer in its entirety and allow this action to proceed in the Eastern District of Oklahoma.

Respectfully submitted this 22nd day of October, 2025.

>*/s/ Anthony I. Paronich*
>Anthony I. Paronich, *pro hac vice*
>Paronich Law, P.C.
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>(508) 221-1510
>anthony@paronichlaw.com
>
>Matthew D. Alison, OBA No. 32723
>233 S. Detroit Ave. STE 200
>Tulsa, OK 74120
>918-347-6169
>matthew@iaelaw.com
>
>*Counsel for Plaintiff and those similarly situated*