## AIN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

AMBER FERRELL, individually and on    )
     behalf of all others similarly situated    )
                                     )
             Plaintiff,            )
                                       )
v.                                      )    Case No. 6:25-cv-00330-JAR
                                       )
ORTHOTECH, LLC.,             )    **ORAL ARGUMENT REQUESTED**
                                       )
             Defendants.        )

## ORTHOTECH, LLC'S MOTION TO DISMISS
## PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM
## AND BRIEF IN SUPPORT

Defendant OrthoTech, LLC ("OrthoTech") submits this Motion to Dismiss this case pursuant to Rule 12(b)(6) for failure to state a claim, and brief in support:

## INTRODUCTION

Plaintiff is pursuing a putative nationwide class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., alleging the receipt of unsolicited text messages from OrthoTech despite that she is on the national do-not-call list. Plaintiff asserts one claim under 47 U.S.C. § 227(c)(5), through the TCPA's corresponding regulation 47 C.F.R. §§ 64.1200(c)(2) (the do-not-call or "DNC" registry regulations). Plaintiff also asserts a tag-along state claim under Oklahoma's Telephone Solicitation Act ("OTSA"), Okla. Stat. Ann. tit. 15, § 775C, *et seq*., alleging the receipt of unsolicited text messages. Plaintiff's claims suffers from threshold pleading defects, and this case should be dismissed with prejudice.

1

First, as it relates to Plaintiff's TCPA claim, the provision at issue applies only to *telephone calls* and not text messages. *See* 47 U.S.C. § 227(c)(5) (applying the private right of action only to "telephone calls"). Plaintiff's only route to a claim is that the Federal Communications Commission ("FCC") has previously issued orders expanding the scope of the term "telephone call" to encompass text messages. However, on June 20, 2025, the Supreme Court issued its decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, holding trial courts are "not bound by the FCC's interpretation of the TCPA." *See* 145 S. Ct. 2006, 2022 (2025). This Court is now to utilize "the reading the court would have reached if no agency were involved," as the TCPA was written in 1991. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) ("[E]very statute's meaning is fixed at the time of enactment.") (internal quotation and citation omitted). This Court's lodestar is to reach the *best* interpretation of the statutory term. *Id.*

Turning to the TCPA at the time it was enacted, Plaintiff's claim must be dismissed. Plaintiff alleges he received text messages on his cell phone in violation of the TCPA. But, the plain language of the TCPA and its history indicate the term "telephone call" could not have been intended to cover text messages (which did not exist at the time the TCPA was enacted in 1991). While technology usage has shifted since 1991, it is for Congress to expand or alter the TCPA. Modern day policy rationales cannot supplant plain language. Plaintiff's OTSA claim exemplifies the precise problem with her TCPA claim. Through the OTSA, Oklahoma sought to specifically encompass text messages by definition. Congress, on the other hand, has not so acted with respect to the TCPA. Plaintiff cannot act to fill the void with her own legislative prerogatives.

Second, Plaintiff's OTSA claim has three critical problems. At the outset, should Plaintiff's TCPA claim be dismissed, Plaintiff has alleged no independent basis to bring her OTSA claim in federal court. As a more substantive matter, Plaintiff does not allege the provision of the OTSA under which she is bringing a claim. This is critical. To the extent Plaintiff is seeking to pursue a claim under Subsection 775C.3.A for the alleged receipt of text messages without consent, this claim applies only to "an automated system for the selection or dialing of telephone numbers or the playing of a recorded message." Plaintiff does not allege the use of such technology. And, finally, the OTSA affords a private right of action only to called parties *aggrieved* by a violation. Plaintiff fails to allege any facts to plausibly suggest she was aggrieved, i.e., that she has incurred *actual* damage, as the Oklahoma Supreme Court has interpreted that term to require. *See Walls v. Am. Tobacco Co.*, 2000 OK 66, ¶ 10.

This case should be dismissed with prejudice. Plaintiff simply cannot avail herself of the claims at issue, which is evident from the face of Plaintiff's Complaint.

## **BACKGROUND**

Plaintiff alleges that she received three text messages from OrthoTech despite that she is registered on the national do-not-call registry. (*Id.* ¶¶ 17, 18.) Plaintiff asserts a claim under 47 U.S.C. § 227(c)(5), predicated on the FCC's do-not-call registry regulation, 47 C.F.R. § 64.1200(c)(2). (*Id.* ¶¶ 34-38.) Plaintiff also asserts a tag-along claim under the OTSA. (*Id.* ¶¶ 40-43.) Plaintiff does not, however, identify the subsection of the OTSA under which she is pursuing her claim. (*See id.* [citing the entirety of the OTSA].)

Plaintiff seeks to represent a putative nationwide class, as well as an Oklahoma state subclass, defined as follows:

> **National DNC Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Oklahoma OTSA Subclass**: All Oklahoma residents who (1) received a telemarketing text message from Defendant promoting its goods or services (2) without their prior express written consent (3) within the last two years.

(*Id.* ¶ 25.)

## DISCUSSION

### I.     LEGAL STANDARD

A complaint fails under Rule 12(b)(6) if it does not provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court accepts well-pleaded facts as true, it "need not accept as true a complaint's conclusory allegations, unwarranted inferences, or legal conclusions." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025).

## II.    PLAINTIFF'S TCPA CLAIM SHOULD BE DISMISSED BECAUSE 47 U.S.C. § 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES.

### A.    The TCPA Must be Interpreted as Written in 1991, Unconstrained by the FCC's Orders and Shifts in Modern Technology.

Over the past two years, the Supreme Court has effectuated a sea change in statutory interpretation generally, and with respect to the TCPA specifically. In 2024, the Supreme Court eliminated *Chevron* deference, returning courts to their traditional function "to decide whether the law means what the agency says." *Loper Bright*, 603 U.S. at 392. Courts must utilize "the reading the court would have reached if no agency were involved." *Id.* at 400 (internal quotations and citation omitted). Critically, "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted). The Court's focus is now to reach the *best* interpretation of the provision. *See id.* ("In the business of statutory interpretation, if it is not the best, it is not permissible."). The Supreme Court reiterated that statutes must "have a single, best meaning," noting that "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

And then last year, the Supreme Court issued its decision in *McLaughlin Chiropractic*. *See* 145 S. Ct. at 2011. This decision was critical because courts throughout the country had previously determined that FCC rulings were controlling on trial courts under a statute known as the Hobbs Act. *See Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016); *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010). In *McLaughlin Chiropractic*, the Supreme Court eliminated this line of authority, holding in no uncertain terms that district courts are not "bound by the FCC's interpretation of the TCPA." *See* 145 S. Ct. at 2022.

5

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the provision of the TCPA at hand (the meaning of the term "telephone call" in Subsection 227(c)(5)) must be interpreted to reach the "best" interpretation, as it was written in 1991, without influence by the modern shifts in technology and unconstrained by the interpretations of the FCC.

### B.    Regulatory Background

The TCPA was enacted in 1991 and, in relevant part, allows the FCC to issue regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The TCPA also authorizes the FCC to "require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). Section 227(c)(5), in turn, affords a private right of action to persons receiving "more than one **telephone call** within any 12-month period" in violation of the prescribed regulations. 47 U.S.C. § 227(c)(5) (emphasis added).

Subsection 227(c) does not mention text messages, notwithstanding that the TCPA distinguishes between telephone calls and text messages in other sections. *See* 47 U.S.C. § 227(e). However, in 2002, the FCC issued a notice regarding its desire to update the TCPA to account for "[n]ew technologies" that emerged since 1991. *See* Notice of Proposed Rulemaking, 17 FCC Rcd 17459, ¶ 1 (2002) ("2002 NPRM"). The FCC did not identify in the 2002 NPRM that it was evaluating the expansion of the term "call" to encompass text messages. Then, in 2003, the FCC proclaimed "call" under the TCPA—notably, analyzing only the term "call" under Section 227(b) rather than "telephone call" under Section

227(c)—"encompasses both voice calls and text calls." *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003) ("2003 Order"). The FCC identified no statutory basis for concluding a text message was a "call," and offered no explanation. At best, it appears that the FCC merely believed it consistent with the goals of the statute. *See id*. When the FCC expanded its view to Subsection 227(c)(5)—an action it did not take until *2023*—the FCC simply pointed to the "objectives of the TCPA" and failed to conduct any statutory analysis. *See In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 F.C.C. Rcd. 12247 (2023).

Following the 2003 Order, courts simply fell in line with the FCC, on the auspices that they were incapable of disagreeing with FCC edicts. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding that courts "must defer" to the FCC's determination that a text message was a "call"); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (deferring wholesale to the FCC's 2003 Order); *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 641 n.1 (N.D. Ill. 2019) (finding the court was bound by the FCC's 2003 Order). Through *Loper Bright* and *McLaughlin Chiropractic*, we now know that these decisions rested on mistaken principles.

### C.     The Plain Language of Subsection 227(c)(5) Requires Dismissal.

With the elimination of *Chevron* and the Hobbs Act as hurdles, the issue for the Court now is a straightforward matter of statutory interpretation: whether a text message is a "telephone call" under Section 227(c)(5). The answer is an equally straightforward "no."

It is axiomatic that "[w]e should prefer the plain meaning since that approach respects the words of Congress." *Lamie v. U.S. Tr*., 540 U.S. 526, 536 (2004). Plain language is dispositive, ending this Court's inquiry. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well.") (internal quotations and citation omitted). Because "telephone call" is undefined, courts evaluate the "ordinary, contemporary, common meaning" of the term. *See Perrin v. United States*, 444 U.S. 37, 42 (1979).

Congress could not have meant for "telephone call" to include "text message," for the simple reason that text messages "did not exist in 1991 when the TCPA was enacted." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). The meaning of a "telephone call" has not mysteriously changed in the last 30 years; "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. But whether in 1991, or 2025, a text message is not a "telephone call." Courts engaged in a plain language analysis, post-*Loper* and *McLaughlin* have readily concluded that a text message is not a telephone call.

By way of example, as one Northern District of Florida court recently put it evaluating this identical issue under Subsection 227(c)(5):

> As CVS cogently explains,[] No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). The court went on to hold that "no ordinary person would think of a text message as a '*telephone* call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Id* at 1273 (emphasis in original). The court determined that its "role is not to look beyond clear language to ascertain Congress's purpose." *Id.* at 1274. The Court thus concluded that it need not adopt the FCC's view, which "conflicts with the ordinary public meaning of clear statutory text." *Id.* at 1275.

Similarly instructive is the Central District of Illinois's recent decision in *Jones v. Blackstone Med. Services, LLC*, which likewise evaluated whether Section 227(c)(5) applied to text messages. *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) *on appeal* No. 25-2398. Following *Loper Bright* and *McLaughlin Chiropractic*, the court engaged in its own statutory analysis. *Id.* at *3-4. The court analyzed and held:

> Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. . . . Moreover, in today's American parlance, "telephone call" means something entirely different from "text message". Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.

*Id.* at 899 (internal quotations and citations omitted). The court likewise engaged in an analysis of the FCC's orders, noting the FCC's orders regarding text messaging in fact only discussed Section 227(b), and not Section 227(c). *See id.* at 900. While the court afforded respect to the FCC's view, it found the plain language controlled, holding "[i]t is not for a court to legislate by reading into the TCPA something that is not there." *Id.* at 901. Rather

it is for Congress to update the TCPA. *Id.*; *see also Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("[I]n common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication . . . .").

Plain language ends the inquiry. It is inconceivable Congress intended "telephone call" to encompass a form of written communication yet to exist, and one bearing no similarity to a telephone call apart from being received on a handset. Reading "telephone call" to encompass "text message" would similarly render any type of communication— emails, app-to-app messages, push notifications—equally a "telephone call" if it is received on a handset and a notification is received by the user. As the Supreme Court emphasized in *Loper Bright*: "every statute's meaning is fixed at the time of enactment." 603 U.S. at 400 (internal quotation marks omitted). While the use of text messaging has grown since 1991, the meaning of "telephone call" has not somehow changed. And that is the inquiry— whether "telephone call" as written in 1991 encompasses text messages. It does not.

### D.    Principles of Statutory Interpretation Likewise Evidence That a Text Message Is Not a Telephone Call.

In addition to the plan language, the context of the TCPA itself and principles of statutory interpretation evidence the clear distinction between a "telephone call" and a "text message" in the TCPA.

First, Congress amended the TCPA in 2018 and specifically brought text messages within the scope of the TCPA under a different provision regarding Caller ID requirements, and distinguished telephone calls from text messages. Consolidated Appropriations Act,

2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). Specifically, Section 227(e) speaks to "caller identification services," which in turn is defined referring to "a call made using a voice service or a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A) (emphasis added). This proves that Congress, like everyone else, views a call and a text message as separate forms of communication. Congress did not amend Section 227(c) to include text messages (nor has it ever in the myriad amendments Congress has made to the TCPA in the last 20 years). *See also Sayed*, 2025 WL 2997759, at *2 ("[T]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction.") (citing 47 U.S.C. § 227(e)); *Dilanyan v. Hugo Boss Fashions, Inc*., No. 2:25-CV-05093-JLS-BFM, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025) ("That Congress updated § 227(e) to include text messages in addition to calls, but has not similarly amended § 227(c)(5), suggests that Congress views a text message as a distinct form of communication to which § 227(c)(5)'s private right of action does not apply.").[1]

It is axiomatic that "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). If Congress intended for the term "telephone call" to include text messages in Section 227(c), the delineation between calls and text messages in Section 227(e) would be meaningless; Congress would

---

[1] In *Dilanyan*, a Central District of California court "read[] the ordinary meaning of 'telephone call' to exclude 'text message.'" *Dilanyan*, 2025 WL 3549868, at *2. However, the court found it was bound by a Ninth Circuit decision and thus certified this issue for appeal to the Ninth Circuit, where it is now pending. *See* No. 25-7951 (9th Cir.).

have just prohibited "calls" using false Caller ID information. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

Second, the TCPA's definition of "telephone solicitation" similarly establishes that a telephone call and a text message are not synonymous. A "telephone solicitation," in relevant part, is defined as "a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ." 47 U.S.C. § 227(a)(4).[2] The use of the disjunctive here evidences that "Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis*, 797 F. Supp. 3d at 1274.

And third, Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It would make no sense for Congress to hide within the commonly understood term "telephone call" all communication forms (now and in the future) received on a handset. There is nothing about the term "telephone call" that suggests Congress's clairvoyance to include a form of written communication much more analogous to a letter or an email. Congress remains free to speak clearly and amend the

---

[2] It bears noting that the term "message" does not mean "text message." This definition, was adopted in 1991, prior to the advent of text messages. *See Jones*, 792 F. Supp. 3d at 900 (finding that "Section 227(a)(4) does not refer to 'text message'" and cannot be interpreted as covering text messages). "Message" refers not to text messages, but *prerecorded voice messages*. The term "message" appears throughout the TCPA, elucidating its meaning. *See* 47 U.S.C. § 227(b)(1)(B) (prohibiting certain calls "using an artificial or prerecorded voice to deliver a message . . . ."); 47 U.S.C. § 227(d) (referring to fax messages and "artificial or prerecorded voice messages").

TCPA to include text messages should it so choose. In the meantime, "telephone call" is a simple and commonly understood term; it does not include text messages.

The OTSA, under which Plaintiff brings his second claim, provides a key point of contradistinction. The OTSA specifically applies to text messages, distinguishing this term from "telephone calls." *See* Okla. Stat. Ann. tit. 15, § 775C.2.3 (defining "prior express written consent" as "a written agreement that . . . clearly authorizes the person making or allowing the placement of a commercial telephonic sales call by telephone call, *text message*, or voicemail transmission.") (emphasis added). Congress—and not Plaintiff— remains free to similarly amend the TCPA.

### E.    Policy Goals Cannot Overcome Plain Language.

The Supreme Court teaches that only Congress can "revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). This Court's role is narrow. *See, e.g.*, *Davis*, 797 F. Supp. 3d at 1274 ("[T]the court's role is not to look beyond clear language to ascertain Congress's purpose."); *Jones*, 792 F. Supp. 3d at 901 ("It is not for a court to legislate by reading into the TCPA something that is not there.").

The FCC's 2003 expansion of the term "call" in Subsection 227(b)—again, not the term "telephone call," which appears in Subsection 227(c)(5) at issue here—was not rooted in plain language or even principles of statutory interpretation. In the 2003 Order itself the FCC provides no explanation whatsoever for its view. See 2003 Order, 18 F.C.C. Rcd. at 14115. Indeed, the NPRM did not so much as mention text messages. See NPRM, 17

F.C.C. Rcd. at 17459. As best it can be gleaned, the FCC used the 2003 Order to account for "[n]ew technologies" that the statute did not address. See id. at 17460; see also 2003 Order at Appendix B ¶ 2. When the FCC expanded its view in 2023 to Section 227(c)(5), the FCC simply pointed to the "objectives of the TCPA" and failed to conduct a statutory analysis. *See In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 F.C.C. Rcd. 12247 (2023).

Policy prerogatives, however, cannot supplant or alter plain language. The Supreme Court recently had occasion to evaluate a similar effort to read the TCPA's terminology to encompass new technologies. In *Facebook, Inc. v. Duguid*, the Supreme Court essentially evaluated whether the term "automatic telephone dialing system" in the TCPA embraced certain modern dialing equipment. 592 U.S. 395 (2021). The Court rejected this argument, including the broad policy arguments articulated by the plaintiff. *See id.* at 408 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). The Court determined:

> Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked. "Senescent" as a number generator (and perhaps the TCPA itself) may be, that is *no justification for eschewing the best reading* of § 227(a)(1)(A). This Court must interpret what Congress wrote . . . .

Id. at 409 (emphasis added).

The TCPA was not intended to act as free-wheeling statute to address all telephonic outreach. *See also Loper*, 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."); *Hulce v. Zipongo Inc*., 132 F.4th 493, 500 (7th Cir. 2025) ("Hulce's appeals to the remedial

14

nature of the TCPA or selective quoting of the legislative history do not carry the day.").

A text message is not a "telephone call" and is not actionable under Section 227(c)(5),

unless and until Congress amends the statute. And it is the exclusive province of Congress

to so amend the TCPA. *See, e.g.*, *Jones*, 792 F. Supp. 3d at 901 ("It is for Congress to

respond to the issues presented in this case and to address the realities of today's technology

(and the intrusions caused therefrom) which is commonplace in American life in 2025. The

Court confines itself to its assigned role which does not include legislating.").

## III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE OTSA.

### A.    Plaintiff Alleges No Independent Basis for Jurisdiction.

At the outset, Plaintiff's only alleged basis for jurisdiction in this Court is her federal

TCPA claim. (*See* Dkt. 2 ¶ 5.) Plaintiff alleges no independent grounds for jurisdiction in

federal court over her OTSA claim. This claim must this be dismissed. *See, e.g.*, *Foxfield*

*Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) ("A district court

should normally dismiss supplemental state law claims after all federal claims have been

dismissed, particularly when the federal claims are dismissed before trial.") (cleaned up).

### B.    Plaintiff Fails to Allege a Violation of the OTSA.

Even if this Court were to retain jurisdiction over Plaintiff's OTSA claim, Plaintiff

fails to state a claim for two reasons. <u>First</u>, Plaintiff does not allege which provision of the

OTSA was allegedly violation, nor does she allege facts to support the elements of such a

claim. And <u>second</u>, only *aggrieved* called parties can pursue a claim, and Plaintiff nowhere

alleges any facts to meet this standard.

### a. Plaintiff fails to allege the provision of the OTSA under which he is suing, much less facts to support a claim.

Plaintiff provides general background regarding the OTSA, seeks to allege a subclass with respect to the OTSA, and identifies an OTSA claim as Count II of the Complaint. At no point, however, does Plaintiff actually identify the particular subsection under which he is pursuing his claim. (*See* Dkt. 2 ¶¶ 39-43 [citing generally to the entire OTSA, Okla. Stat. tit. 15 §§ 775C.1–775C.6].) This is inherently problematic as the OTSA consists of multiple substantive provisions. *See* Okla. Stat. tit. 15 §§ 775C.3–775C.4; *see also Eliker v. Nelnet*, No. 17-01208-EFM-GEB, 2018 WL 1566644, at *2 (D. Kan. Mar. 30, 2018) (noting, among other things, the plaintiff failed to allege which aspect of a statutory provision was violated).

It appears that Plaintiff may be intending to pursue a claim under Subsection 775C.3.A, which states as follows:

> A person may not make or knowingly allow a commercial telephonic sales call to be made if such call involves an *automated system for the selection or dialing of telephone numbers or the playing of a recorded message* when a connection is completed to a number called without the prior express written consent of the called party

Okla. Stat. Ann. tit. 15, § 775C.3A (emphasis added); (*see, e.g.*, Dkt. 2 ¶¶ 10, 40 [referencing the transmission of text messages without prior express written consent].) Even if this were Plaintiff's intended claim, however, Plaintiff clearly fails to allege the facts necessary to support it.

Subsection 775C.3A regulates only certain types of outreach—namely, in relevant part, "commercial telephonic sales calls" that "involve[] an automated system for the

selection or dialing of telephone numbers . . . ." Okla. Stat. Ann. tit. 15, § 775C.3A. Plaintiff alleges no facts to suggest that the outreach at issue was transmitted via such equipment; Plaintiff does not even acknowledge this element of the claim. Plaintiff simply alleges the receipt of three messages, and claims she did not provide prior express consent. (*See* Dkt. 2 ¶¶ 18-20.) Analogously, with respect to the TCPA's coverage of automatic telephone dialing systems (known as an ATDS), federal courts require *facts* to be alleged to plausibly suggest the use of such equipment. *See, e.g.*, *Martin v. Direct Wines, Inc*., No. 15 C 757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) ("It is insufficient for plaintiff to simply parrot the language of the TCPA and conclusorily allege that defendants used an ATDS."); *Might v. Cap. One Bank (USA), N.A*., No. 18-716, 2019 WL 544955, at *3 (W.D. Okla. Feb. 11, 2019) ("The undersigned concurs with those courts that have found sufficient factual allegations where a Plaintiff pleads a *large number of calls or some other indicia of an ATDS* and that the defendant used an ATDS without more.") (emphasis added).

Plaintiff neither alleges a specific subsection of the OTSA she believes was violated, nor alleges facts to plausibly suggest a violation. To the extent this Court retains jurisdiction over Plaintiff's OTSA claim, Plaintiff's OTSA claim should thus be dismissed for failure to state a claim.

### b.    Plaintiff alleges no facts to support that she is aggrieved.

The OTSA contains a private right of action. However, it is afforded only for "[a] called party who is aggrieved by a violation of this act . . . ." Okla. Stat. Ann. tit. 15, § 775C.6. Plaintiff alleges no facts to support that she was aggrieved under Oklahoma law.

The Oklahoma Supreme Court has evaluated the meaning of the term "aggrieved" in a similar statutory context. In *Walls v. American Tobacco Co.*, a Northern District of Oklahoma court certified questions to the Oklahoma Supreme Court, in a class action brought by cigarette purchasers, including:

> Assuming arguendo that a product was sold in violation of other provisions of the Oklahoma Consumer Protection Act ("OCPA"), may a party bring an action as an "aggrieved consumer" under 15 O.S. 761.1A solely as a result of his or her payment of the purchase price for that product?

*Walls*, 2000 OK 66, ¶ 1. The plaintiffs argued that an aggrieved consumer is simply one that was a consumer in an alleged unlawful transaction. *Id.* ¶¶ 9, 10. The Oklahoma Supreme Court disagreed, holding the term "'aggrieved consumer' implies that the consumer must have suffered some detriment caused by a violation of the OCPA." *Id.* ¶¶ 10, 11. The Court further held that "a consumer must suffer some *detriment or loss* as a result of a violation of the OCPA" to demonstrate actual damages and have a right of action. *Id.* ¶ 13 (emphasis added); *see also Sisemore v. Dolgencorp, LLC*, 212 F. Supp. 3d 1106, 1109–10 (N.D. Okla. 2016) (summarizing the *Walls* analysis); *Parks v. AT & T Mobility, LLC*, No. CIV-09-212-D, 2012 WL 4382194, at *10 (W.D. Okla. Sept. 25, 2012) (same). Federal courts, including the Tenth Circuit, have reached the same with respect to statutes that require a party to be "aggrieved by" a violation to state a claim. *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022) (holding that plaintiffs are not "aggrieved by" an alleged violation of the Stored Communications Act sufficient to bring a private cause of action "without first showing they suffered actual damages").

The *Walls* analysis is critical, and outcome determinative, here. The OTSA affords a private right of action to "[a] called party who is *aggrieved by a violation* . . . ." Okla. Stat. Ann. tit. 15, § 775C.6 (emphasis added). Akin to the analysis in *Walls*, the OTSA does not provide a private right of action to merely a *called party*,[3] but only to a called party who is *aggrieved* by a violation. This requires more than the mere receipt of alleged unlawful communications. It requires a detriment or loss caused by the alleged violation.

Here, Plaintiff alleges no facts to support any detriment or loss caused by the three allegedly unlawful text messages received. Plaintiff provides only the conclusory contention that "she suffered an invasion of privacy, an intrusion into her life, and a private nuisance." (Dkt. 2 ¶ 22.) In other words, Plaintiff alleges only that she was a called party and received three messages. *See Walls*, 2000 OK 66, ¶ 13 ("[A] person may not bring an action as an aggrieved consumer under § 761.1(A) solely as a result of his or her payment of the purchase price for that product. An essential element of a claim under § 761.1(A) is actual injury or damage caused by a violation of the OCPA."). Plaintiff alleges no detriment or loss of any kind other than the mere receipt of three allegedly unsolicited text messages. And plainly she suffered none. Plaintiff alleges a purely statutory violation; Plaintiff does not request, and clearly did not suffer, actual damages. Plaintiff thus fails to state a claim for a violation of the OTSA.

---

[3] A "Called Party" is defined as "a person who is the regular user of the telephone number that receives a commercial telephonic sales call." Okla. Stat. Ann. tit. 15, § 775C.2.1

## CONCLUSION

For the foregoing reasons, OrthoTech respectfully requests the Court: (i) dismiss this case with prejudice; and (ii) award all other relief it deems equitable and just.

DATED:  January 15, 2026                Respectfully submitted,

_Joseph R. Farris_ (signature)

Joseph R. Farris, OBA #2835
FRANDEN | FARRIS | QUILLIN
   GOODNIGHT | ROBERTS + WARD
Two West 2nd Street, Suite 900
Tulsa, OK  74103
(918) 583-7129
Fax: (918) 584-3814
jfarris@tulsalawyer.com

Mark S. Eisen, Esq.
(to be admitted *pro hac vice*)
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois  60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192
meisen@beneschlaw.com
***Attorneys for Defendant OrthoTech,
LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Matthew D. Alison
223 S. Detroit Ave., Suite 200
Tulsa, OK  74120

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA  02043

_Joseph R. Farris_
Joseph R. Farris