**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AMBER FERRELL, individually and on behalf of all others similarly situated<br>            Plaintiff,<br><br>v.<br><br>ORTHOTECH, LLC.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>) Case No. 6:25-cv-00330-JAR<br>)<br>) **ORAL ARGUMENT REQUESTED**<br>)<br>) |

**ORTHOTECH, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

The issues before this Court are straightforward matters of statutory interpretation, boiling down to whether the words Congress and the Oklahoma Legislature wrote mean what they say, and whether it remains their exclusive province to amend legislation.

Plaintiff brings this putative class action asserting two causes—one under the federal TCPA and one under the Oklahoma OTSA—relating to the alleged receipt of three text messages from OrthoTech. Plaintiff's claim under the TCPA fails for the simple reason that the section at issue—47 U.S.C. § 227(c)(5)—applies only to *telephone calls*. It does not apply to an entirely different form of communication, *text messages*. Plaintiff's OTSA claim fails for multiple reasons, including because Plaintiff fails to allege she was *aggrieved* by the three alleged messages. Not only is this term a critical element of statutory standing under the OTSA, but has been strictly applied by the Oklahoma Supreme Court.

For the reasons detailed in OrthoTech's Motion and as detailed further herein, Plaintiff's Class Action Complaint should be dismissed for failure to state a claim.

**I.     SUBSECTION 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES.**

   **A.     Text Messages Are an Entirely Different *Form of Communication*.**

Plaintiff portrays the application of Subsection 227(c)(5) to text messages as a matter of technological evolution. Plaintiff is wrong. The issue at hand is not an evolution in technology, but an evaluation of whether the term "telephone call" embraces an entirely different form of communication bearing no resemblance to a telephone call.

1

<u>First</u>, Plaintiff focuses her opposition brief on the axiom that statutes often apply beyond the strict technological confines of the moment, analogizing to the application of the Fourth Amendment to thermal imaging and the evolution in farm technology. (Dkt. 31 at 1, 5-8.) This is smoke and mirrors. The far more apt analogy is the evolution in the *telephone*. The manner and means in which calls are placed and received have surely evolved—iPhones, smart watches, tablets, etc.—but a telephone call has not changed.

This is where Plaintiff goes astray. A text message is not the evolution of a telephone call. A telephone call is still a telephone call. A text message is a different form of communication Congress has not yet regulated under the TCPA. "Telephone call" cannot be used to embrace alternative forms of communication simply because they are received on a modern cellular telephone. The Supreme Court recently evaluated a similar argument in the context of evaluating whether stock options constituted "money remuneration" under an older railroad retirement statute. *See Wisconsin Cent. v. United States,* 585 U.S. 274 (2018). The Court rejected analogous policy arguments. *Id.* at 283-84. Addressing the key issue here, the Court noted that while the term "money" may mold over time, stock options "were not then—and are not now—[money remuneration]." *Id.* at 284.

<u>Second</u>, and relatedly, Plaintiff's argument fails under the weight of its absurdity. Plaintiff argues a "telephone call" should be read to include *any communication via telephone*. (Dkt. 31 at 1.)[1] Not only does this fail proper statutory interpretation (as detailed below), it would mean all modern communications—like emails and in-app messages and notifications—qualify as telephone calls. It would be nonsensical to portray these forms of communication as "telephone calls" because they are received on a modern handset. "Telephone call" as ordinarily used in 1991 is not some vague and nebulous term.

Congress alone can update the TCPA. *Wisconsin Cent.*, 585 U.S. at 284 ("Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences.").

---

[1] Contrary to Plaintiff's argument, the issue is not whether calls must involve a voice. (*See* Dkt. 31 at 12.) Many telephone calls go unanswered, but remain telephone calls. The issue here is whether a text message—a written communication analogous to an email or letter—is a call.

### B. This Court Must Apply the *Best* Interpretation.

Bolstered by inapt analogies, Plaintiff engages in the wrong analysis. The Court's goal is to arrive at the *best* interpretation. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("In the business of statutory interpretation, if it is not the best, it is not permissible."). Plaintiff, instead, endeavors to search for *possible* interpretations.

First, Plaintiff turns to dictionary definitions for solace, arguing a "call" is any effort to communicate by telephone. (*See* Dkt. 31 at 3-5.) The overreliance on out-of-context definitions is self-defeating. As Judge Learned Hand put it, "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary . . . ." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404 (1945); *see also Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182, 1192 (10th Cir. 2020) ("Fealty to text, however, is more than blind adherence to dictionary definitions; we must consider context.").

Again, the Supreme Court has hit the nail on the head. In *Wisconsin Central*, the Court analyzed a broad dictionary definition of "money" as "property or possessions of any kind viewed as convertible into money or having value expressible in terms of money." 585 U.S. at 280. The Court disregarded this definition, stating "while the term 'money' sometimes might be used in this much more expansive sense, that isn't how the term was ordinarily used at the time of the Act's adoption (or is even today)." *Id.* at 281. Such is the case here. It may be that the term "telephone call" could sometimes be used in such an expansive sense, but that is not how the term would ordinarily be used in 1991 (nor today).

Second, the effect of overreliance on dictionary definitions is the failure to identify the *best* interpretation. Plaintiff, rather, analyzes whether "the term is capacious enough to include text messages or even morse code . . . ." (Dkt. 31 at 4.) This is the crux of Plaintiff's error. It is *possible* the term "call" could encompass text messages. But would that be the *best* interpretation of the term in 1991? Of course not. *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. 2025) (finding plaintiff's interpretation of telephone call "eminently reasonable," but not *best*).

And third, Plaintiff (and the case law he cites) posits that OrthoTech (and the case law it cites) improperly relies on modern conceptions of a telephone call and text message.

(Dkt. 31 at 4-5, 10.) Plaintiff's logic implies the term telephone call was somehow broader in 1991, when it could only have meant one thing. This defies common sense. To paraphrase Plaintiff, if it feels unnatural to read "telephone call" as including text messages today, it would have been *inconceivable* to have read it as such in 1991. (*See* Dkt. 31 at 1.) The term "telephone call" has not expanded nor contracted since 1991. And this is exactly why courts like *Jones* and *Davis* used *historical understandings* to confirm modern common sense. *See Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."); *Jones*, 792 F. Supp. 3d at 899 (same).

The goal is to achieve the *best* interpretation. As the Seventh Circuit put it, "one can properly attribute to legislators the reasonable minimum intention to say what one would ordinarily be understood as saying, given the circumstances in which it is said." *United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012) (internal quotations and citation omitted). Plaintiff fails to seek out or address this common and best meaning.

**B.     Plaintiff Ignores Key Rules of Statutory Construction.**

While Plaintiff's opposition is long on block quotations, it is short on any statutory analysis. Plaintiff overlooks and fails to analyze three critical issues.

<u>First</u>, Plaintiff ignores that the TCPA was amended in 2018 to address text messages and Subsection 227(c)(5) was left *untouched*. Specifically, in Subsection 227(e), Congress distinguished between "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A). *Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("[T]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction . . . ."). By reading "telephone call" to encompass text messages, Plaintiff renders the distinction drawn in Subsection 227(e) entirely meaningless. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . . different terms usually have different meanings.").

<u>Second</u>, Plaintiff turns to the definition of "telephone solicitation," ignoring the actual text and context of this term. (Dkt. 31 at 13-14.) While the regulation at issue (47

4

C.F.R. § 64.1200(c)(2)) pertains to "telephone solicitations," where Plaintiff errs is that the term "message" within that definition refers not to text messages—which post-date the TCPA—but to prerecorded voice messages and fax messages. *See Jones*, 792 F. Supp. 3d at 900 ("Section 227(a)(4) does not refer to 'text message'; 'telephone call or message' could not be interpreted in 1991 to telephone call or text message . . . ."). The term "message" appears throughout the TCPA and this consistency provides its meaning. *See* 47 U.S.C. § 227(b)(1)(B); 47 U.S.C. § 227(d). These provisions, and the definition of "telephone solicitation" were part of the 1991 enactment, and did not cover a non-existent technology. *See* PL 102–243, December 20, 1991, 105 Stat 2394.[2] To suggest Congress is clairvoyant is self-defeating. "Message" does not refer to text message.

Plaintiff ignores the more salient take away. If she were correct, Congress's use of the disjunctive "telephone call *or* message" would require treating the two terms as separate. And the subsequent use of just "telephone call" in Subsection 227(c)(5) must be to the exclusion of "message." *See Davis*, 797 F. Supp. 3d at 1274 ("Congress does not use the term 'telephone call' to encompass all 'messages.'"). Further, there would be nothing unusual—much less asymmetrical (Dkt. 31 at 14)—for Congress to limit the private right of action to telephone calls. *See Davis*, 797 F. Supp. 3d at 1274 ("Congress can (and does) provide private rights of action narrower than its full breadth of regulation.").

Third, Plaintiff does not grapple with the axiom that Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Plaintiff offers no explanation as to why Congress would have used "telephone call" as the mousehole to hide the elephant of all forms of future outreach simply because such communications are received on a handheld device.[3]

---

[2] The authority Plaintiff cites makes this identical error, assuming "message" must somehow relate to text messages. *See Mey v. Liberty Home Guard, LLC*, No. 5:23-cv-00281, Dkt. 153 (N.D. W.Va. Jan. 5, 2026). The *Mey* court did not analyze (i) that the definition of "telephone solicitation" predates text messages and (ii) the consistent usage of "message" throughout the TCPA.

[3] Plaintiff draws a false equivalence between text messages and outreach to pagers, which the TCPA does regulate. *See* 47 U.S.C. § 227(b). Plaintiff conflates how a message *appears* with how the communication is made. A pager was *called*, even if outreach appeared in text form. Plaintiff's unsupported and vague allusion to accessibility technology gets her no closer. (*See* Dkt. 31 at 13.)

5

### C. Plaintiff's Cited Cases Are Unpersuasive.

OrthoTech acknowledges that there are cases contrary to its view. Plaintiff *heavily* quotes from some of these cases. They are unpersuasive and should be disregarded.

First, these cases over-rely on dictionary definitions divorced from context. *See Alvarez v. Fiesta Nissan, Inc.*, No. 25-00343, 2026 WL 202930, at *4 (S.D. Tex. Jan. 26, 2026); *Wilson v. Better Mortg. Corp.*, -- F. Supp. 3d --, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025); *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026). The result, detailed above, is that these cases engage in the wrong analysis. Namely, these courts do not even endeavor to identify the best interpretation.

By way of example, the court in *Alvarez* framed the issue at hand as "whether the concept of a 'text message' is fairly embraced by the meaning of 'telephone call' in 1991." *Alvarez*, 2026 WL 202930, at *4; *see also Wilson*, 2025 WL 3493815, at *5 (same). This is wrong. The issue is not whether text messages *fairly* fall within a broad definition, but whether the term "telephone call" as written in 1991 is *best* interpreted to include text messages. Surely it is not, as it would sweep into the TCPA all modern communications.

Second, these cases turn to policy arguments and the manifestly unsupported views of the FCC. *See Wilson*, 2025 WL 3493815, at *7-8; *Howard*, 164 F.4th at 1124. As detailed in OrthoTech's Motion and further below, both considerations are improper here.

And third, Plaintiff's effort to portray the Supreme Court as having resolved the issue at hand is misleading. (*See* Dkt. 31 at 3, 12.) The issue appeared before the Supreme Court twice, and on both occasions was *unchallenged*. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016); *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021). These cases *did not* analyze the issue and are not binding, much less entitled to statutory stare decisis (as Plaintiff claims). *Davis*, 797 F. Supp. 3d at 1273 (rejecting this argument).

### D. The Supreme Court Has Already Rejected Plaintiff's Policy Argument.

Plaintiff leans on her perception of the TCPA's policy goals to avoid the *best* reading of "telephone call." (Dkt. 31 at 12.) The Supreme Court, however, already rejected this policy argument in an effort to expand the TCPA. *See Facebook*, 592 U.S. 395 at 408 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does

6

not mean it adopted a broad autodialer definition" that could be used to expand the reach of the statute). Critically here, the Court held that the fact that aspects of the TCPA had become senescent "is no justification for eschewing the best reading" of the TCPA. *Id.* at 409. Plaintiff ignores this case. Plaintiff cannot use broad policy goals to expand the TCPA.

### E.     The FCC's Views Are Unpersuasive.

Finally, Plaintiff contends that the FCC's view that text messages qualify as calls is entitled to respect. (*See* Dkt. 31 at 14.) The reliance on the FCC's views is misguided.

<u>First</u>, the Supreme Court noted that agency interpretations "issued roughly contemporaneously with enactment of the statute and remained consistent over time" can be persuasive. *See Loper Bright*, 603 U.S. at 386, 394. The FCC's views do not fit this bill. The FCC did not address text messages until *2003* (and even then in the context of Section 227(b)). And the FCC did not apply Subsection 227(c) to text messages until *2023*.

<u>Second</u>, neither of the FCC's orders regarding text messages engaged in statutory analysis. Far from reasoned analyses turning on agency expertise, the FCC's 2003 Order of the term "call" involved no substance whatsoever. *See* 2003 Order, 18 F.C.C. Rcd. 14014, 14115. The NPRM did not even mention text messages. *See* NPRM, 17 F.C.C. Rcd. 17459. In its 2023 Order, the FCC similarly provided no statutory analysis *See* 2023 Order, 38 F.C.C. Rcd. 12247, 12257, 12272. Instead, the FCC obliquely referred to the "objectives of the TCPA" and determined its interpretation made enforcement easier. *Id.*

And <u>third</u>, it is incorrect to argue the TCPA affords the FCC authority to expand the term "telephone call." (Dkt. 31 at 14.) The TCPA does not provide the FCC discretion to redefine "telephone call" or expand the right of action. *See* 47 U.S.C. § 227(c). Where Congress affords an agency definitional authority, it does so *expressly*. *See Loper Bright*, 603 U.S. at 394 (providing examples). The FCC cannot alter Congress's choices. *See Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025); *McGonigle v. Pure Green Franchise Corp.*, No. 25-61164, 2026 WL 111338, *2 (S.D. Fla. Jan. 15, 2026) (indicating the expansion of "telephone call" to include text messages was not delegated to the FCC).

These FCC views are entitled to no weight. *See, e.g.*, *Davis*, 797 F. Supp. 3d at 1275 (affording respect to the FCC, while rejecting its interpretation).

\*       \*       \*

The issue at hand boils down to two related questions: (i) is it the *best* interpretation of "telephone call" to encompass text messages and (ii) whose responsibility is it to update the TCPA? The answer to first is clearly *no*. No person in 1991 (or now) would have used "telephone call" in this manner. And the answer to the second is *Congress*. It is Congress's exclusive province to update the TCPA for modern communications.

## II.  PLAINTIFF CANNOT STATE A CLAIM UNDER THE OTSA.

### A.  Without a TCPA Claim, Plaintiff's OTSA Claim Must be Dismissed.

At the outset, Plaintiff appears to concede—should this Court dismiss Plaintiff's TCPA claim—she did not allege a basis for federal jurisdiction over her OTSA claim. (*See* Dkt. 31 at 15.) The appropriate remedy in that event is to dismiss Plaintiff's claim. *See*, *Carlos v. GEO Grp., Inc.*, No. 22-379, 2023 WL 1433914, at \*2 (W.D. Okla. Feb. 1, 2023)

### B.  Plaintiff Asserts No Facts to Support Her OTSA Claim.

Plaintiff next seeks to overlook the fundamental error in her OTSA claim—the failure to allege the provision she believes to have been violated. Contrary to Plaintiff's argument, (Dkt. 31 at 15), she cannot baldly cite to the entire OTSA and claim "the-defendant-unlawfully-harmed-me . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's brief highlights this problem. Despite claiming she need not identify a specific section, Plaintiff devotes two pages to arguing—for the first time—that she has alleged a violation the OTSA's automated call provision, Subsection 775C.3A. (Dkt. 31 at 15-17.) Plaintiff cannot amend her complaint through her opposition. *See Ayres v. Portfolio Recovery Assocs., LLC*, No. 17-01088, 2018 WL 6706021, at \*1 (D. Utah Dec. 20, 2018).

More substantively, Plaintiff cannot assert a claim under Subsection 775C.3A. This Subsection prohibits certain calls that "involves an automated system for the selection or dialing of telephone numbers . . . ." Okla. Stat. Ann. tit. 15, § 775C.3A. Plaintiff nowhere alleges—even conclusorily—that such a system was used. Plaintiff, in response, builds a straw man, arguing she need not identify "the brand name or vendor platform" used. (Dkt. 31 at 15, 16.) Plaintiff misses the point. It is not that Plaintiff fails to allege *granular details* about alleged dialing equipment, it is that Plaintiff fails to allege *any details*. Plaintiff did

not even cite this provision in her Complaint. Plaintiff must allege *facts* to plausibly suggest the use of violative technology. *See Reyes v. Cont'l Fin. Co., LLC*, No. 18-2064, 2019 WL 13247347, at *1 (M.D. Fla. Oct. 4, 2019) (requiring allegation of facts in TCPA context).

The only "fact" Plaintiff points to is the allegation that she received *three* texts. (Dkt. 31 at 16.) This is insufficient. *See, e.g.*, *Bonoan v. Adobe, Inc.*, No. 19-01068, 2019 WL 13071959, at *2 (N.D. Cal. July 12, 2019) ("While a large volume of calls could perhaps support an inference that ATDS was used, two calls are not enough plausibly to support this conclusion."); *Kannon v. Warranty Prot. Servs.*, No. 22-4097, 2023 WL 130831, at *3 (E.D.N.Y. Jan. 9, 2023) (finding three messages insufficient to support the inference).

By Plaintiff's argument, the receipt of any commercial message would itself create an inference that violative technology was used. This is not the case. To the extent this Court finds Plaintiff intended to bring a Subsection 775C.3A claim, it must be dismissed.

### C.     Plaintiff Cannot Read "Aggrieved" Out of the OTSA.

Plaintiff next ignores the OTSA's statutory threshold to pursuing a claim that only "[a] called party who is aggrieved by a violation" can bring a claim. Okla. Stat. Ann. tit. 15, § 775C.6. Plaintiff contends that, because statutory damages are available, any alleged violation *per se* gives rise to a claim. (Dkt. 31 at 17-18.) This argument fails.

First, Plaintiff disregards controlling authority. In *Walls v. American Tobacco*, the Oklahoma Supreme Court evaluated the term "aggrieved consumer" under the OCPA. *See* 2000 OK 66, ¶ 1. The Court held, to qualify as an aggrieved consumer, the "consumer must suffer some detriment or loss as a result of a violation of the OCPA." *Id.* ¶ 13. Plaintiff waives away *Walls*, claiming it involved a different law. (Dkt. 31 at 20.)

This is irrelevant. *Walls* evaluated the same term, "aggrieved," and established this term is not toothless. It requires *detriment or loss* as a gating requirement to pursuing a claim. Indeed, *Walls* cited with approval a decision of the Kansas Supreme Court, *Finstad v. Washburn Univ. of Topeka*, which evaluated the same term under Kansas law, where a statutory penalty was permitted. *See* 252 Kan. 465 (1993). There, the Kansas Supreme Court determined that "aggrieved" required the plaintiffs to show "[a] loss or injury resulting from a violation of the Act" to pursue a claim. *Id.* at 473; *Walls*, 2000 WL ¶ 12.

9

Second, Plaintiff errs in attributing no value to the term "aggrieved" beyond whatever might be required to have standing. (Dkt. 31 at 18.) This is untenable. As Plaintiff points out, Oklahoma imposes a similar standing threshold as federal court. (*See id.*) It would make no sense for "aggrieved" to fulfill no more than the standing threshold that would apply even in the absence of the term "aggrieved." This term must thus require *more*. *See Sisemore v. Dolgencorp, LLC*, 212 F. Supp. 3d 1106, 1110 (N.D. Okla. 2016) (finding the allegation of an injury in fact insufficient to satisfy the aggrieved requirement).

Third, the term "aggrieved" is not surplusage. The OTSA is clear that merely a "called party" does not have a claim, but rather it is only a called party *aggrieved by a violation* that can pursue a claim. To that end, merely receiving a message is not tantamount to being *aggrieved by a violation* of the OTSA (lest the receipt of an unwanted message from a family member would similarly render one aggrieved). *See Walls*, 2000 OK 66, ¶ 13. Contrary to Plaintiff's argument, it is entirely sensical that the Oklahoma legislature would impose a statutory standing requirement permitting only those *aggrieved* to pursue a claim for statutory damages. The legislature was free to omit the term "aggrieved"— allowing any mere called party to pursue a claim—but thought it prudent to avoid no-injury litigation. Plaintiff must suffer a loss or detriment to pursue a claim. She alleges none.

Fourth, and finally, Plaintiff's discussion of nominal damages is a non-sequitur. (Dkt. 31 at 20.) The requirement at hand is a "detriment or loss as a result of a violation of the [OTSA]," *Walls*, 2000 OK 66, ¶ 13, and it is this requirement Plaintiff fails to allege. Plaintiff's reference to "annoyance and intrusion" does little to bridge this gap. (Dkt. 31 at 22.) Plaintiff alleges only that she was a called party; this does not render her *aggrieved*.[4]

## CONCLUSION

For the foregoing reasons, OrthoTech respectfully requests the Court: (i) dismiss this case with prejudice; and (ii) award all other relief it deems equitable and just.

---

[4] Plaintiff's reliance on the Oklahoma Fair Housing Act is far afield. (Dkt. 31 at 23.) Putting aside that this statute specifically defines what renders one aggrieved under this statute, it still requires an *injury*. Okla. Stat. Ann. tit. 25, § 1451(A)(8). Plaintiff has not alleged any injury, much less a detriment or loss (nor, of course, is a text message analogous to discrimination in housing).

DATED:  February 17, 2026                          Respectfully submitted,

*s/ Joseph R. Farris*
Joseph R. Farris, OBA #2835
FRANDEN | FARRIS | QUILLIN
  GOODNIGHT | ROBERTS + WARD
Two West 2nd Street, Suite 900
Tulsa, OK  74103
(918) 583-7129
Fax: (918) 584-3814
jfarris@tulsalawyer.com

Mark S. Eisen, Esq.
(admitted *pro hac vice*)
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois  60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192
meisen@beneschlaw.com

*Attorneys for Defendant OrthoTech, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Matthew D. Alison
223 S. Detroit Ave., Suite 200
Tulsa, OK  74120

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA  02043

*s/ Joseph R. Farris*
Joseph R. Farris