UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION


ANDREW JAMES MCGONIGLE, on     :
behalf of himself and          :
others similarly situated,     :   Civil Action
                               :   No. 1:25-cv-00807-MSN-WEF
          Plaintiffs,          :
                               :   March 13, 2026
          v.                   :   9:34 a.m. - 10:01 a.m.
                               :
TELEFLORA LLC,                 :
                               :
          Defendant.           :
                               :
.............................:

TRANSCRIPT OF MOTION PROCEEDINGS
BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:      WILLIAM ROBINSON, ESQ.
                         William Peter Robinson, III
                         1934 Old Gallows Road, Suite 350K
                         Vienna, VA 22181

                         PARONICH LAW, P.C.
                         Anthony Ilo Paronich, Esquire
                         *Pro hac vice*
                         350 Lincoln Street, Suite 2400
                         Hingham, MA 02043

For the Defendant:       COVINGTON & BURLING LLP
                         Connor James Kelley, Esquire
                         850 10th Street, N.W.
                         Washington, D.C. 20001

                         ROLL LAW GROUP PC
                         James P. Pecht, Esquire
                         *Pro hac vice*
                         Tatiana Wallace, Esquire
                         *Pro hac vice*
                         11444 Olympic Boulevard
                         Los Angeles, CA 90064

  (Continued)

(Continued)

Court Reporter:              Diane Salters, B.S., CSR, RPR, RCR
                             Official Court Reporter
                             United States District Court
                             401 Courthouse Square
                             Alexandria, VA 22314
                             Email: Dianesalters.edva@gmail.com
                             Telephone: (301) 338-8033

Proceedings reported by machine shorthand.  Transcript produced by computer-aided transcription.

*Proceedings*

THE COURTROOM DEPUTY:  *McGonigle v. Teleflora LLC*, Case Number 25-cv-807.

MR. KELLEY:  Good morning, Your Honor.  Connor Kelley on behalf of Teleflora.  I'm joined by my colleagues, J.P. Pecht, who will be handling the motion to dismiss today, and Tatiana Wallace will be handling the motion to transfer.

THE COURT:  Good morning.

MR. PARONICH:  Good morning, Your Honor.  Anthony Paronich on behalf of the plaintiff.

THE COURT:  Good morning, Mr. Paronich.

All right.  This matter comes before the Court on Defendant's motion to dismiss and Plaintiffs' motion to transfer.  I've received the pleadings and reviewed the materials, and I don't think I need to have extensive argument on either issue.  So we'll hear on the motion to dismiss very briefly first.

MR. PECHT:  Good morning, Your Honor, and I understand you want more limited arguments.  I think the key to this case is not whether cell phones are regulated by the TCPA under Section 227(c), but whether a cell phone is a telephone call under 227(c)(5), the private right of action.  The key to that is, 227(c) of the TCPA regulates telephone solicitations, but telephone solicitation is defined to be both telephone call and/or message.  The private right of action is just limited to telephone calls.  So the case law that Teleflora has cited

indicates that it would be inconsistent to interpret the statute to render the word "message" redundant in the term 227(c) defining "solicitations."

Importantly, and maybe something not focused on in the briefing, if you look at other provisions that provide rights of action, they provide broad rights of action. For example, 227(g), which provides rights of action to state attorney generals, calls for a right of action for those attorney generals for telephone calls or other transmissions. That's very different than the private right of action here at issue in 227(c)(5), which is limited to telephone calls.

THE COURT: What support do you have for your position? You have nothing from the Fourth Circuit or courts in this district, do you?

MR. PECHT: That is correct. All of the case law that is cited by all of the parties are outside of this district. There is one case that's in from West Virginia cited by Defendants -- sorry, cited by Plaintiffs -- and that's the *Mey* case. The *Mey* case, however, doesn't actually address the issue of the surplusage. It doesn't address how a court could render the term "telephone call" to mean both telephone calls or messages when telephone solicitations, the actual phrase that's regulated under the TCPA, it doesn't render how telephone solicitation can separate out of a telephone call or message, but under the private right of action, the phrase

*Proceedings*

"telephone call" also means messages.  That shouldn't make sense because, then, the word "message," under the definition of the telephone solicitation, would be nothing.

And since the briefing, as Your Honor, I'm sure, is well aware, cases are being decided outside of this district every day -- not today, as far as I know -- but last week, there was *Stockdale*; and *Stockdale*, as we put in our notice of authority, is a very, very well-reasoned case.  It addresses nearly all of the authorities cited by both parties on this issue.  And one of the interesting things that's raised in *Stockdale* and the substance of that decision is all in the footnotes, footnote 5 in particular.  And the one issue is, this case really highlights that almost all of the cases outside of this district that have addressed this issue used dictionary definitions that are not on point.  Either they are dictionary definitions that are after 1991 -- and as Your Honor knows, we need to be looking at what a telephone call meant in 1991 when the TCPA was enacted -- *Stockdale* really notes that the majority of the cases looking at this issue looked at the definition of just "call," the broader term "call."  They were not looking at the term "call" as modified by what, in 1991, was understood by telephone; and it distinguishes, for example, the Ninth Circuit *Satterfield* case and the *RNC* case on that basis because they were looking at "call" under Section 227(b).  And, obviously, looking at what the understanding of a

*Proceedings*

telephone call after 1991 is not as relevant.  You know, the Supreme Court wants us to look at what was the understanding in 1991.  And I think everyone understands, a telephone call in 1991 and a telephone call now is when you pick up your phone, you dial a number, trying to reach someone by voice.  That's a pretty common-sense understanding.  I was around when cell phones started to be able to text message.  This is not a relatively old term.  It happened, I think, when I was in college, I believe is when it started.  I've never used the word "call" to reference a text message.  I don't think anyone has.  I don't think they did in 1991; I don't think they do now.

But I did want to reference *Stockdale;* and, particularly, *Stockdale* looked at the definition of "call" -- and there's a few other cases -- there's at least one other case, *Alvarez* -- who've done this as well.  It looked at the word "call" and said that's a noun, meaning the act of calling on a telephone.  And this is what a lot of cases stop at, and they just say it's any act of a call on a telephone.

But it went further and said, well, let's look at what telephone was in 1991, and it found the definition of what people understood in 1991 before text messaging ever entered the scene, and it found a telephone was an instrument for reproducing sounds at a distance, one in which sound is converted into electrical impulses for transmission by wire.

*Proceedings*

And it found that if by combining it -- so call as modified by telephone -- that taken together, those could not include modern-day text because text messages do not use a telephone to reproduce sounds at a distance.  And it stops analysis there, and it really criticizes decisions that don't look at those two meanings together and, instead, it criticizes cases that say that any communications from a telephone would be a telephone call.  And the reason for that is because that would be overly expansive.

On footnote 5, I think the reasoning is very clear, and I think it's persuasive.  It says, in 1991, the definition of "telephone" was limited to voice capabilities.  That is not to say that later technology -- for example, cell phones -- cannot fit the definition of "telephone" just because they have additional capabilities.  But the only capability possibly covered by the definition of "telephone call" in 1991 was reproducing sound.  Accordingly, capabilities of modern cell phones beyond reproducing sounds cannot be covered by the plain meaning of a telephone call in 1991.  To hold otherwise would suggest that any communication from a modern cell phone would be a telephone call under the TCPA; and, that, Your Honor, would include the push notifications; it would include emails. Emails are clearly a form of communication we do on our cell phones.  You know, our cell phones today are more than just a telephone, as it was understood in 1991.  They are calculators;

they're cameras; they're video devices; they're text messaging devices, which, I would argue, is more similar to a telegraph technology from 1991 that a telephone call.  In fact, telegraphs are where the initial abbreviations happened for communications; like, SOS was a telegraph term, similar to how when people write short text messages, they would write "BRB" for be right back, things of that nature, because it was a means of transmitting messages, and so you wanted to shorten it.

In the prior right of action under 227(c)(5), Congress didn't write "all communication"; it didn't write "transmission," like they did in Section G that I mentioned; they didn't write "any communication," "any contact," "any call or message"; they wrote "telephone call."  And the only reasonable and the best interpretation, which is the one the Court has to arrive at, not just a reasonable interpretation, the best interpretation, is not to read out the term "message" from the definition of "telephone solicitation."  And, again, just because the TCPA regulates a broader scope of telephone solicitations doesn't mean that a private right of action can't be more -- a limited set of telephone solicitations; and that makes sense.  And the counterargument to that is, well, you know why, you know, aren't the people who are getting text messages going to be left out from regulation?  And the answer to that is no.  As I mentioned, under Section G, attorney state

generals can enforce any violation of the TCPA for telephone calls or other transmissions. The FCC can certainly do enforcement actions. But the mere fact that a private right of action is not available for a specific communication form that is not a telephone call that may be a telephone solicitation otherwise covered under the TCPA doesn't mean that there is not an enforcement mechanism for that broader telephone solicitation.

And I think -- that's what I wanted to say, Your Honor.

THE COURT: Thank you. Mr. Paronich.

MR. PARONICH: Thank you, Your Honor. I would also like to introduce my co-counsel William Robinson, who's here as well.

THE COURT: Good morning.

MR. PARONICH: Your Honor, the focus of the defendant's argument today was on the text message portion of their partial motion to dismiss, so I'll focus on that as well.

As Your Honor identified, there's been one Fourth Circuit district court to address this issue following *McLaughlin*, and that was in West Virginia where Judge Bailey agreed with the plaintiff's position here, which is consistent with 20 years of TCPA case law, is that a telemarketing text message can be regulated by the National Do Not Call Registry. Text messages are communications that are sent through

*Proceedings*

telephones.  They're transmitted through the telephone network. Unlike an email or a push notification, they're directed to a telephone number; and it's only recently since the Supreme Court identified that courts are no longer bound by FCC regulations and directives on these issues, that defendants have tried to start to advance the argument that something that was settled for 20 years, that a marketing text message has a private right action to a number on the Do Not Call Registry, does no longer.  But the statute itself confirms, just as Judge Bailey held, that Congress did not use "call" to only mean a voice communication.  For example, Congress prohibited certain types of calls to numbers assigned to paging services, which must be a written and text message.  It cannot be a voice call.  But that has been clearly held to be a call under the TCPA, just like a text message has been by the majority of courts.  That includes the only circuit court of appeals to address the issue, which is the Ninth Circuit, that also includes the *Shopperschoice.Com, LLC* decision, which was a case that was originally brought in the Eastern District of Virginia that Judge Trenga transferred to Louisiana.

So with the *Mey* decision, Judge Bailey -- and in the interest of time, I won't go through all the various reasons -- but looked at the statutory text, looked at the history of enforcement, looked at the FCC directives -- which he didn't blindly defer to -- but consistent with *McLaughlin*, held that

they were entitled to appropriate respect.  All of these things have held that a text message, which is a communication through the telephone, can be a call for the purposes of the TCPA's Do Not Call Registry.

And the mere fact that text messages didn't exist in 1991 should not be a reason for the Court to grant the motion. Of course, technologies evolve and statutes routinely apply to technologies evolving, such as electric cars are still going to be regulated under parking restrictions.  Just the mere fact that technology evolves, that's exactly the kind of thing the statute was designed to protect.  And as I mentioned earlier, the idea that any communication that happened on a smartphone will be considered regulated by the TCPA, that's simply not true, and Judge Bailey addressed that in the *Mey* decision. This has to do with telephone communications, which a text message and a phone call is, but, of course, an email is not and a push notification is not.

The TCPA, this wasn't -- I think all of the cases that have addressed this issue have held -- this wasn't something that was meaningfully disputed for years and now has become a motion that's decided regularly.  The most recent decision was yesterday in the Eastern District of Pennsylvania, which also denied a similar motion to dismiss, *Cole v. C/T Install America*.  In addition to highlighting the *Mey v. Liberty* case from our briefing, I do want to also identify the

*Proceedings*

*Shopperschoice* case, as I mentioned, in Louisiana, not just because of the fact that it started in this district, but also because it addressed in detail the *Alvarez* decision that defense counsel identified, which went through the history and the dictionary definition of the word "call" and talked in detail about Fifth Circuit case law, Seventh Circuit case law, multiple courts of appeals, how repeatedly statutes can adjust to evolving technology, such as text messages.  And in the majority of the decisions that have gone the other way for the defendant, they simply stop at the word "call" with respect to modern usage.  But the decisions that are getting more into the issue that aren't simply looking at modern conversational, colloquial use, the analysis is that the communication is sent through the telephone if it's a live voice call or if it's a text message call.  They are both calls under the TCPA, which does regulate telephone solicitations on calls or messages under (c)(5).

And, Your Honor, the only other issue that I wanted to address is that, in the briefing, there's some talk of the later amendments to the TCPA, but *Alvarez v. Fiesta Nissan* takes this on directly where it gives the analogy of the legislature enacting the law regarding electronic vehicles.  It doesn't have to go back and amend every law that relates to just vehicles just because the technology has evolved.

So, here, Your Honor, our position, we believe, is

*Proceedings*

consistent with the TCPA; it is consistent with the majority of cases, including the only Fourth Circuit district court to address this issue, and the only circuit court of appeals to address this issue.  And it's for those reasons, Your Honor, that we do believe the Fourth Circuit has gotten it right with Judge Bailey, the Ninth Circuit Court of Appeals has gotten it right; and the law, even though there's no blind deference to the FCC required, has still gotten it right that a text message can constitute a call under the TCPA.  Thank you, Your Honor.

THE COURT:  All right.  Is there anything you want to add, while you're standing at the podium, on your motion to transfer that's not in the papers?

MR. PARONICH:  I'll be very brief, Your Honor.  If I could have a moment just to make sure I'm mentioning something not in the papers.

I think the only thing I'd like to briefly address is to address the issue of perceived forum shopping here because, to be clear, it's been a material change in the law.  The case was filed; the Supreme Court decision came in; and now the Ninth Circuit since the Supreme Court decision is the only circuit court of appeals to have addressed this issue.  And so while the defendant's opposition highlights the Virginia subclass and why that would dictate against a transfer, I just wanted to point out, Your Honor, that that's a true subclass.  If the case proceeds in the Ninth Circuit, there likely won't

*Proceedings*

be a Virginia subclass because it's redundant of the nationwide statute.  The subclass was amended, and we amended the complaint after the Supreme Court's decision to address what we believe is the unlikely, but possible, event that the federal claims would not proceed.

THE COURT:  Thank you.

You wish to be heard?

MR. PECHT:  Yes, Your Honor.

THE COURT:  Very briefly.

MR. PECHT:  Very briefly.  Although, Your Honor, I would like to -- my colleague, Ms. Wallace, is handling the motion to transfer, so I would ask that she be able to be permitted to make at least a very short argument on the motion to transfer.

Just a couple comments.  One, there's been a focus on the cases cited by the plaintiff in this case that seem to be emphasizing devices versus forms of communication; and whether or not a device or a broad category, like a vehicle, can be updated is a very different concept than a form of communication.  But private right of action here is not about all forms of transmission from a device, and that device may be updated in the future.  It's about a form of communication that existed in 1991:  A telephone call.  It wasn't about a telephone; it wasn't about a call.  The phrase is "telephone call."  And in 1991, that meant a form of communication that

everyone understood to be about voice.

The only other thing I wanted to mention is the *Mey* case from the Northern District of West Virginia, which does not address the surplusage issue between 227(c)(5) and 227(a)(4), the telephone solicitation definition versus the private action phrasing of "telephone call."  It somewhat glosses over that, and its reasoning actually really supports Teleflora's position here.  At page 6 of the *Mey* decision, it says that Section 227 -- and this is quoting -- concerns protecting consumers' privacy rights to avoid receiving telephone solicitations, to which they object.  The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message," italicized; and that by explicitly including messages, Congress made clear that the statute's protections extended beyond traditional voice calls.  So what the *Mey* court was saying is that, in the definition of "telephone solicitation," by including the word "message" in addition to "telephone call," that Congress was intending the TCPA to support more than an audio call, a voice call.

But using that exact same logic, the private right of action excludes "message."  And so by the same logic that *Mey* issues at page 6, that shows Congress' intent to not include anything beyond traditional voice calls because it doesn't use the word "message," which *Mey* finds that the word -- the term "message" as defined in 227(c) is the part of that definition

*Proceedings*

that goes to anything beyond traditional voice calls.

And that is it for the motion to dismiss for me.  My colleague may have some additional things on the motion to transfer if the Court will law.

THE COURT:  All right.  Well, I'll permit briefly, but you may not want to snatch defeat from the jaws of victory.

MS. WALLACE:  Good morning, Your Honor.

On the motion to transfer venue, we don't dispute that Teleflora's a California company, but we do object to Plaintiff's forum shopping to seek, in his view, more favorable law recently rendered in the Ninth Circuit instead of litigating this case in his home forum.  This is not a transfer motivated by any purported convenience or justice.

I'll start by addressing the interests of justice quickly because Plaintiff principally argues that this case should be transferred to the Ninth Circuit for clarity and the law there or familiarity with the issues.  Setting the record straight, Teleflora has not conceded that Ninth Circuit law is clear on the outcome of Teleflora's motion to dismiss for the reasons that my colleague has argued.  The cases Plaintiff cites for the proposition that a text qualifies as a call, those relate to Section 227(b) of the TCPA, not 227(c)(5). And, at bottom, Plaintiff still cannot identify applicable precedent that supports changing venues for more settled law. Crediting Plaintiff's arguments might mean this Court would

*Proceedings*

never decide TCPA issues just because another federal court got there first.  That cannot be the law.  Federal courts are equally capable of interpreting federal law and deciding federal questions, however novel, and Plaintiff's out-of-circuit authorities are not persuasive.  Those involve transfers granted, in part, to resolve jurisdictional issues, which don't apply here.  Binding authority in this district, *Samsung v. Rambus*, found forum manipulation relevant to the interests of justice in deciding whether to grant transfers.  Systemic integrity requires taking into account a party's attempt to game federal courts through forum manipulation, and favors denying tactical venue transfers like this one.

Plaintiff also minimizes the Virginia interests in this case, but the interests of justice favor having local controversies decided at home.  Plaintiff alleges a second cause of action under Virginia law with a putative Virginia subclass, so the interests of justice really weigh very heavily against transfer and can be dispositive.

And one last point on party convenience.  This is clearly not an inconvenient forum for Plaintiff.  This is his home from which he's filed a litany of putative class actions, and Plaintiff himself argued just a year ago in *Shopperschoice* that it would be inconvenient to be transferred away from Virginia.  So his ruse of alleged convenience in the Ninth Circuit now has a hollow ring, again, as in the *Rambus* case.

THE COURT:  Thank you.  I think I've heard enough argument on this, and I can rule on both motions.  I'm going to deny both motions.  I'm not persuaded by the defendant's argument, and there is no binding law here in the Eastern District of Virginia in the Fourth Circuit, and so the motion to dismiss is denied, and the motion to transfer is denied.  I see no basis for transferring this matter to California.  Frankly, I don't think I've ever seen a motion to transfer where the convenience of the defendant's witnesses was noted by the plaintiff seeking the transfer, having chosen the forum in the first place.  It's the wonderful thing about this job.  You always see something new.

But the motions are denied.  And I know there was an effort to settle this case.  It was not successful.  But I'm hoping that the parties will now sit down and focus on resolving this.  I know many of these other cases have been settled, and so I would hope that this is one that falls into that category very soon.  So I thank counsel and we'll call the next matter.

*        *        *        *        *

<u>CERTIFICATE OF REPORTER</u>

I, Diane Salters, hereby certify that the foregoing transcript is a true and accurate record of the stenographic proceedings in this matter.

/s/ Diane Salters

_____

Diane Salters, CSR, RCR, RPR
Official Court Reporter