

**User Name:** Anthony Paronich

**Date and Time:** Thursday, April 2, 2026 7:30 PM EDT

**Job Number:** 280423620

## Document (1)

1. *Rubin v. Staples, Inc.*

   **Client/Matter:** -None-

   **Search Terms:** TCPA Text Message as Calls

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2026 LexisNexis

No *Shepard's* Signal™
As of: April 2, 2026 11:30 PM Z

## *Rubin v. Staples, Inc.*

United States District Court for the District of New Jersey

March 31, 2026, Decided; March 31, 2026, Filed

Civ. No. 2:2545515 (WJM)

**Reporter**

2026 U.S. Dist. LEXIS 70359 *; 2026 LX 187062

JOSHUA RUBIN, on behalf of himself and all others similarly situated, Plaintiff, v. STAPLES, INC., Defendant.

## Core Terms

*text message*, subscriber, telephone, residential, staple, cell phone, artificial, prerecord, telephone *call*, telephone solicitation, definite statement, right to privacy, cellular telephone, defense motion, technology, telemarket, registry, user, wireless, audible, message, entity, phone, encompass, martini

**Counsel:** **[*1]** For JOSHUA RUBIN, on behalf of himself and all others similarly situated, Plaintiff: DANIEL ZEMEL, LEAD ATTORNEY, ZEMEL LAW LLC, ENGLEWOOD CLIFFS, NJ.

For STAPLES, INC., Defendant: LAURI A. MAZZUCHETTI, LEAD ATTORNEY, WHITNEY MORGAN SMITH, KELLEY DRYE & WARREN LLP, MADISON, NJ.

**Judges:** WILLIAM J. MARTINI, UNITED STATES DISTRICT JUDGE.

**Opinion by:** WILLIAM J. MARTINI

## Opinion

**OPINION**

This is a putative class action filed by Plaintiff Joshua Rubin ("Plaintiff") on behalf of recipients of unsolicited marketing *text messages* from Defendant Staples, Inc. ("Defendant" or "Staples") for violations of the *Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 et seq.* Defendant moves to dismiss Plaintiff's Amended Complaint pursuant to *Fed. R. Civ. P. Rule 12(b)(6)*, or in the alternative, for a more definite statement pursuant to *Fed. R. Civ. P. Rule 12(e)*. ECF No. 14. The Court decides the motion without oral argument pursuant to *Fed. R. Civ. P. 78(b)*. Having carefully considered the parties' submissions, Defendant's motion to dismiss is **granted**. Defendant's motion for a more definite statement is **denied as moot**.

## I. BACKGROUND

Plaintiff initially sued in state court on September 12, 2025. ECF No. 1. This action was then removed to this Court on September 12, 2025 under *28 U.S.C. § 1331* and the *Class Action Fairness Act, 28 U.S.C. §§ 1332(d)*, 1441(a)-(b), and 1453. In the Amended Complaint, filed November 11, 2025, Plaintiff contends that **[*2]** within the last four years, Staples engaged in "a solicitation *text message* campaign" in which Staples sent him "numerous" *text messages* to his cell phone tying to sell items such as paper or ink at a discount. Am. Compl. ¶¶ 8-10, 19, ECF No. 10. Those texts did not identify the name of the sender or the telephone number or address at which the sender could be contacted. *Id.* ¶¶ 11, 14, 47-48,52-53.

Plaintiff alleges violations of both the two main provisions of the *TCPA*—§ 227(b) and § 227(c). In Count I, Plaintiff claims that Staples violated the

do-not-**call** ("DNC") restrictions in *47 U.S.C. § 227(c)(5)* by texting his "residential" cell phone "on at least two separate occasions" within a 12-month period and more than 30 days after his specific instruction to cease texting him. *Id.* ¶¶ 13, 17-18. Plaintiff also pleads that Defendant failed to keep a DNC list or otherwise comply with implementing regulations, *47 C.F.R. § 64.1200(d)(l)-(6)*. *Id.* ¶¶ 41-42. In Counts II and III, Plaintiff alleges that Defendant sent advertising **text messages** to his cell phone without his consent utilizing an "artificial or prerecorded template" and "artificial or prerecorded voice" in violation of *47 U.S.C. § 227(b)* and *47 C.F.R. § 64.1200(a)*. For each violation, Plaintiff seeks statutory damages and treble damages **[*3]** pursuant to *47 U.S.C. § 227(c)(5)*. *Id.* ¶¶ 44-45, 49-50, 54-55. Plaintiff asserts allegations on behalf of two classes: recipients of Staples' 1) telemarketing texts despite do-not-**call** requests; and 2) **text messages** sent without prior express consent that contained artificial or prerecorded messages. *Id.* at ¶ 28.

In moving to dismiss, Staples argues that that § 227(b) and (c) of the **TCPA** do not prohibit **text messages** to cell phones because § 227(b) proscribes artificial or prerecorded *voice* **calls** and § 227(c) protects only "*residential* telephone subscribers" who are on a DNC registry. Staples also claims that Plaintiff's factual allegations fail to support any inference that Staples failed to adhere to § 64.1200(d)'s requirements. Alternatively, Defendant seeks a more definite statement requiring Plaintiff to provide the phone number where he claims to have received the **text messages** at issue.

## II. DISCUSSION

### A. Standard for Motion to Dismiss

On a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*, "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving *party*." *Phillips v. Cnty. of Allegheny, 515*

*F.3d 224, 231 (3d Cir. 2008)* (internal citations omitted). Courts must "determine whether, under any reasonable reading of the complaint, the Plaintiff may **[*4]** be entitled to relief." *Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)*. However, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)*. Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. *See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997)*. A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Twombly, 550 U.S. at 555*). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)*.

### B. Prerecorded *Calls*, *47 U.S.C. § 227(b)* and *47 C.F.R. § 64.1200(a)*

The **TCPA**, enacted in 1991, is a "remedial statute that was passed to protect consumers" from "intrusive and unwanted" automated telephone **calls** and "should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268, 271 (3d Cir. 2013)*. Specifically, § 227(b)(1) prohibits "any **call**" (other than for emergency purposes or made with the prior express consent of the recipient) using any 1) automatic telephone dialing system ("ATDS") or 2) an artificial or prerecorded voice to any telephone number including a cellular telephone service. *47 U.S.C. § 227(b)(1)(A)*; *see also 47 C.F.R. § 64.1200(a)* (barring "any telephone **call**" that is not made for emergency purposes **[*5]** or with prior express consent of the **called** party "using an automatic telephone dialing system or an artificial voice."). The **TCPA** prohibitions are to act "in the interest of [] privacy rights." *Susinno v. Work Out*

*World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (citing *47 U.S.C. § 227(b)(2)(C)*). "[A] voice *message* or a *text message* are not distinguishable in terms of being an invasion of privacy." *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009)*. Thus, § 227(b)'s restriction on any "*call*" has been deemed to encompass *text messages*. *See Dominguez on Behalf of Himself v. Yahoo, Inc., 894 F.3d 116, 118, n.3 (3d Cir. 2018)*; *Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016)*, *as revised* (Feb. 9, 2016) ("A *text message* to a cellular telephone, [] qualifies as a '*call*' within the compass of § 227(b)(l)(A)(iii)"); *see also Howard v. Republican Nat'l Comm.,    F.4th   , No. 23-3826, 2026 WL 90273, at *4 (9th Cir. Jan. 13, 2026)* (noting that even in absence of agency deference under *Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)*, statutory construction supports conclusion that text constitutes a "*call*" within meaning of *TCPA*). Hence the *text messages* Plaintiff received constitute "*calls*" for purposes of § 227(b)(1)(A).

Likewise, the "*TCPA*'s prohibition on automated dialing applies to both voice *calls* and *text messages*." *Gager v. Dell Financial Servs., LLC, 727 F.3d 265, 268-69 n.2 (3d Cir. 2013)*; *Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 615 n.l (2020)*; *see also In the Matter of Rules & Reguls. Implementing the Tel Consumer Prot. Act of 1991, SoundBite Communications, Inc.*, 27 F.C.C. Red. 15391, 15392 (2012). However, because Plaintiff does not allege that Staples sent texts using an automatic dialing system, that prong is not at issue.

Rather, Plaintiff posits that Staples violated the statute by utilizing an "artificial or prerecorded template," which he maintains satisfies the "artificial or prerecorded voice" requirement. **[*6]** *See* Am. Compl. ¶ 47; Pl. Opp'n. Br. 9. Staples responds that "voice" is an audible communication produced by vocal cords and therefore, prewritten or "template" *text messages* do not count as "an artificial or prerecorded voice" under § 227(b). On this dispositive inquiry, the Court agrees with Staples.

"As in all cases of statutory interpretation, our inquiry begins with the language of the statute and focuses on Congress' intent." *Susinno v. Work Out World Inc., 862 F.3d 346, 348-49 (3d Cir. 2017)* (citing *United States v. Abbott, 574 F.3d 203, 206 (3d Cir. 2009)*). The Court is to "independently determine for itself the "meaning of the law under ordinary principles of statutoiy interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp., 606 U.S. 146, 155 (2025)* (citing *Loper Bright Enters. v. Raimondo, 603 U.S. 369, 402 (2024)*). "Where the statutory language is plain and unambiguous, further inquiry is not required." *Rosenberg v. XM Ventures, 274 F.3d 137, 141 (3d Cir. 2001)*.

In § 227(b), certain "*calls*" (which include texts) are barred only where they either utilize an ATDS (not alleged here) or an artificial or prerecorded voice. The plain and unambiguous meaning of "voice" is an audible sound produced by a person's vocal cords. *See* https://www.merriam-webster.com/dictionary/voice. A *text message* is not an audible sound and thus is not an "artificial or prerecorded voice." While the Third Circuit has not addressed this question, other courts **[*7]** have squarely concluded that a *text message* does not constitute use of an "artificial voice." *See e.g., Trim v. Reward Zone USA LLC, 76 F.4th 1157, 1161 (9th Cir. 2023)* ("Congress clearly intended 'voice' in *47 U.S.C. § 227(b)(1)(A)* to encompass only audible sounds, because the ordinary meaning of voice and the statutory context of the *TCPA* establish that voice refers to an audible sound."); *Soliman v. Subway Franchisee Advert. Fund Tr., LTD., 101 F.4th 176, 187 (2d Cir. 2024)* (holding that text is not an "artificial voice" under § 227(b)(1)(A) because "voice" ordinarily refers to "a sound produced by a human being" and that "Congress meant 'voice' to mean something audible, not a *text message*").

Plaintiff would have the Court interpret "voice" to

include a "template" despite no evidence that Congress intended to do so. Nor does Plaintiff cite any caselaw that has held that a ***text message*** satisfies the artificial or prerecorded "voice" prong of § 227(b)(1)(A). Instead, Plaintiff insists his interpretation prevents "selective enforcement" of a statute. PL Opp'n. Br. 9. That is, if unsolicited marketing ***text messages*** that use an ATDS are precluded by § 227(b) but those that do not use an ATDS are not, Plaintiff maintains that that would lack "uniformity" in the statute's enforcement. *Id.* However, reading § 227(b) to bar ***text messages*** only if they either use ATDS or use "voice" is not "selective enforcement," **[*8]** but rather, giving effect to eveiy word that Congress uses. *See Rosenberg v. XM Ventures, 274 F.3d 137, 141 (3d Cir. 2001)*; *see also Howard, __ F.4th __, 2026 WL 90273, at *5* (noting rejection of broader meaning of "voice" that includes symbolic or poetic uses because then "all ***text messages*** would already be covered by the phrase '***call*** made using a voice service,' thereby rendering the additional language concerning '***text messages***' as surplusage"). The statute expressly limits its proscriptions to ***calls*** that utilize an ATDS or a "voice." Because Plaintiff has not alleged that he received texts utilizing either, Plaintiffs § 227(b) and § 64.1200(a) claims are **dismissed without prejudice**.

C. Do-Not-***Call*** List *47 U.S.C. § 227(c)(1-5)* and *47 C.F.R. § 64.1200(d)*

The ***TCPA*** provides that a "person who has received more than one *telephone **call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may sue to recover up to $500 in damages for each violation. *47 U.S.C. § 227(c)(5)* (emphasis added). The implementing regulation that Staples purportedly violated, *47 C.F.R. § 64.1200(d)*, provides in relevant part: "No person or entity shall initiate ... any ***call*** for telemarketing purposes to a *residential telephone subscriber* unless such person or entity has instituted procedures for maintaining a list of persons who request **[*9]** not to receive such ***calls*** made by or

on behalf of that person or entity." *47 C.F.R. § 64.1200(d)* (emphasis added). Those § 64.1200(d) procedures include requiring telemarketers to: maintain a DNC list and have available upon demand a related written policy; train telemarketing staff on use of the DNC list; record and honor DNC requests within a reasonable amount of time from when the request is made; and identify the seller's name and number during pre-recorded or artificial ***calls***. *47 C.F.R. § 64.1200(d)(l)-(6))*,

*1. Residential Telephone Subscribers*

Staples contends that subsection (d) is inapplicable to cell phone users because Congress intended that provision to apply only to residential telephones that are "hardwired into the building" or "used by individuals in the home, and not a cellular telephone, which can be used anywhere." Def. Br, 17-18. To show that Congress meant to exclude cell phone users in § 227(c), Staples notes that that provision makes no mention of cell phone users in contrast to other sections of the ***TCPA***, such as § 227(b) and § 64.1200(a)(l)(iii) where "cellular telephone service" is expressly mentioned. Staples concludes that because this shows that "both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone," Congress **[*10]** "purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." Def. Br. 19.

The Court disagrees and rejects this *expression unius est exclusio alterius* canon of interpretation ("the expression of one thing implies the exclusion of others") as evidence of congressional intent to exclude cell phone users as "residential subscribers" in § 277(c)(5). *See e.g., Jackson v. Direct Building Supplies, No. 23-01569, 2024 WL 184449, at *6 (M.D. Pa. Jan. 17, 2024)*; *Cacho v. McCarthy & Kelly LLP, 739 F. Supp. 3d 195, 204 (S.D.N. Y. 2024)*. As explained by the Supreme Court, "[t]he *expressio unius* canon applies only when 'circumstances support[ ] a sensible inference that the term left out must have been meant to be

excluded."' *N.L.R.B. v. SW Gen., Inc., 580 U.S. 288, 302 (2017)* (citing *Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 81 (2002)*). The canon "does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003)* (citing *United States v. Vonn, 535 U.S. 55, 65 (2002)*).

Section 227(b) "forbids the use of artificial and prerecorded messages to enumerated categories of phone *technologies*." *Cacho, 739 F. Supp, 3d at 204* (emphasis added). Those prohibited categories include **_calls_** to a "cellular telephone service."[1] *See 47 U.S.C. § 227(b)(1)(A)* and § 64.1200(a)(l)(iii). Separately, subsection (b)(1)(B) precludes non-emergency artificial or prerecorded voice **_calls_** to "any residential telephone line" absent prior express consent or under **[*11]** certain limited exceptions. *47 U.S.C. § 227(b)(1)(B)*; § 64.1200(a)(3). In contrast, § 227(c) "protec[s] residential telephone *subscribers '* privacy rights." *47 U.S.C. § 227(c)(1)* (emphases added). Indeed, § 227(c) is aptly titled "Protection of subscriber privacy rights" and addresses exactly that - the privacy rights of the "residential telephone *subscriber*," *See* § 227(c)(1). Thus, § 227(b) and (c) do not address members of the same categoiy. *Cacho, 739 F. Supp. 3d at 204-05*. Section (c)(5) authorizes a private right of action to a "person who has received more than one telephone **_call_**" without regard to what type of line or telephone technology receives those **_calls_**. As explained in *Jackson*, § "227(c)'s focus on the telephone subscriber demonstrates that the term 'residential' is a 'functional term not tethered to a particular technology,' focusing instead on the subscriber's privacy rights ... rather than his

telephone's technological capabilities." *Jackson, 2024 WL 184449, at *7*. The specific kind of telephone or communications technology, *e.g.*, a cellular telephone, is distinct from and does not identify the "type or identity of the subscriber to the technology," *i.e.*, a residential subscriber. *Cacho, 739 F. Supp. 3d at 204-205*; *Wilson v. Belter Mortgage Corp., _ F. Supp. 3d _, 2025 WL 3493815, at *8 (S.D.N.Y. Dec. 5, 2025)* ("The statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting subscribers from telephone solicitations, not on any one form of **[*12]** such solicitations.").

"Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [DNC] registry is limited to a 'residential telephone *line*,' as Congress used that term in the preceding subsection." *Jackson, 2024 WL 184449, at *6*. Similarly, had Congress sought to address different subscribers in § 227(b), it would have distinguished between "residential" and "business or commercial" subscribers. *See Cacho, 739 F. Supp. 3d at 207* ("Congress's definition of 'established business relationship' ... expressly distinguishes between a business subscriber and a residential subscriber." (citing *47 U.S.C. § 227(a)(2)(A)*); *see Shelton v. Fast Advance Funding, LLC, 805 Fed. App'x. 156, 159 (3d Cir. 2020)* (holding plaintiff had standing under **_TCPA_** because there was no evidence plaintiff used cell phone for business rather than for personal purposes).

Moreover, Congress specifically mandated that the FCC "initiate a rulemaking proceeding concerning *the need to protect residential telephone subscribers' privacy rights* to avoid receiving telephone solicitations to which they object." § 227(c)(1) (emphasis added). The FCC was also tasked to "prescribe regulations to implement methods and procedures for protecting" those privacy rights. § 277(c)(2). Acknowledging the "growing **[*13]** number of consumers who no longer maintain wireline phone service, and rely

---

[1] Section 227(b)(1)(A) prohibits any ATDS non-emergency **_calls_** to other specified phone lines as well including: i) emergency telephone lines, ii) hospital, health care, or similar establishment room lines, or iii) any "paging service, cellular telephone service, specialized mobile radio service." *47 U.S.C. § 227(b)(i)(A)(i-iii)*.

only on their wireless telephone service," the FCC "presume[d] wireless subscribers who ask to be put on the national do-not-*call* list to be "residential subscribers." 2003 FCC Order at ¶¶ 35, 36, Consistent with this presumption and its rulemaking authority, the FCC implemented § 64.1200(e), which expressly makes both subsection (c), which prohibits telephone solicitations to numbers on a national DNC registry, and subsection (d), which governs an entity's internal DNC registry, "applicable to any person or entity making telephone solicitations or telemarketing *calls* or *text messages* *to wireless telephone numbers* to the extent described in the [2003 FCC Order]." *47 C.F.R. § 64.1200(e)* (emphasis added). According to the 2003 FCC Order, "wireless subscribers may participate in the national do-not-*call* list." 2003 FCC Order at ¶ 36. *See e.g., Izor v. Abacus Data Sys., Inc., No. 19-01057, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019)* (rejecting contention that "residential telephone subscriber" excludes cell phone users because § 64.1200(e) by its terms incorporates solicitations to wireless numbers"). While courts need not defer to an agency's interpretation of a statute, the FCC's sustained interpretation that "residential" subscribers can include cell phone subscribers **[*14]** is consistent with § 227(c)'s text and purpose, as described above.

Finally, excluding a cell phone subscriber from being a "residential" subscriber would have "sweeping practical consequences." *Cacho, 739 F, Supp. 3d at 203-04* (cleaned up). "For more than two decades, cellphone users have been permitted by the FCC to register for the National Do Not *Call* Registry as 'residential subscribers." *Id. at 203*. Additionally, the consensus in court decisions "in this Circuit is that Do Not *Call* claims may apply to cell phones." *Dudley v. Vision Solar, LLC, No. 21-659, 2021 WL 3077557, at *5 (E.D. Pa, July 21, 2021)* (citing cases and denying motion to dismiss § 227(c) claim where plaintiff alleged cell phones were for "residential purposes"); *Atkinson v. Choice Home Warranty, No. 22-04464, 2023 WL 166168, at *4-5 (D.N.J. Jan. 11, 2023)* (same); *Cacho, 739*

*F. Supp. 3d at 203* ("[A]n individual who registers her cellphone with the Do Not *Call* Registry is a residential telephone subscriber."); *Shelton, 805 Fed. App'x. at 159* (affirming that plaintiff had standing to bring *TCPA* suit where unsolicited telemarketing *calls* were to personal cell phone); *Jackson, 2024 WL 184449, at *8* (agreeing with majority of cases that cell phone users may be "residential" telephone subscribers under § 227(c)).[2]

For these reasons, the Court concludes that "residential" telephone subscribers encompass wireless subscribers for purposes of § 227(c) and *47 C.F.R. § 64.1200(d)*.

## 2. *Text Messages*

The *TCPA* is meant to "protect residential telephone subscribers' privacy rights to avoid **[*15]** receiving *telephone solicitations* to which they object," *47 U.S.C. § 227(c)(1)* (emphasis added). The phrase "telephone solicitation," includes "the initiation of a telephone *call* or *message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *47 U.S.C. § 227(a)(4)* (emphasis added). Staples argues that § 227(c)(5)'s right of action protects recipients of at least two "telephone *calls*," *not* "telephone solicitations" and also maintains that because Congress defined a "*text message*" to exclude a "real time, two-way voice communication," *see* § 227(e)(8)(C)(iii), it recognized *text messages* as a distinct mode of communication that Congress did not include as "*calls*" in § 227(c).

Subsection (e)(8)'s definitions are, however, expressly for purposes of subsection (e), which addresses prohibitions on misleading or inaccurate caller identification information. In contrast, the

_____

[2] None of these cases deferred to FCC's interpretation in reaching their decisions. Moreover, the decisions cited by Staples to support its position involve claims under § 227(b) and are thus inapposite. *See Def.* Br. 18-19.

definition of "telephone solicitations" applies to the entire section rather than just subsection (a). Staples fails to show that Congress's definition applicable only to subsection (e) undermines Congress's express intent to protect residential telephone subscribers from unwanted "telephone solicitations," which include both *calls* and messages.

Further, as noted above, **[*16]** the term "*call*" has been held to include *text messages* in § 227(b). Unlike the distinction between "residential" as used in § 227(b) to refer to a type of line, and "residential" as used in § 227(c) to describe the type of subscriber, there is no basis to ascribe different meanings to the term "*call*" by interpreting the same term more narrowly in § 227(c) than in § 227(b). *See Wilson, 2025 WL 3493815, at *7* (noting "weight of [] authority concerning § 227(b) strongly suggests that § 227(c)'s parallel usage of 'telephone *call*[s]' applies to *text messages*"); *Pariseau v. Built USA, LLC, 619 F. Supp. 3d 1203, 1207 (M.D. Fla. 2022)* (agreeing with "several persuasive decisions" that "telephone *call*" in § 227(c) includes *text message* because context of statutoiy text does not distinguish "telephone *call*" in subsection (c) from "telephone *call*" in subsection (b), which has been interpreted to include both voice *call* and *text messages*). The plain meaning of "telephone *call*" in 1991 was "a communication made by telephone" without distinction between an oral or vocal communication as the first *text message* was not sent until 1992. *Wilson*, WL 3493815, at *5. "[A]lthough modern parlance tends to distinguish between phone *calls* and *text messages*, the meaning of 'telephone *call*' in 1991—when the *TCPA* was enacted—was broad enough to encompass *text messages*." *Id.*

Notably, the majority of **[*17]** courts also consider § 277(c)(5)'s protection against "*calls*" to include *text messages*. *See Bradshaw v. CHW Group, Inc., 763 F. Supp. 3d 641 n.5 (D.N.J. 2025)* ("*Text messages* are considered '*calls*' for [§ 227(c)(5)] purposes."); *Champion v. Credit Pros Int'l Corp.,*

No. 21-10814, 2025 WL 3452354 (D.N..T. May 15, 2023) (denying motion to dismiss § 227(c)(5) claim based on receipt of *text messages*); *Zelma v. Penn LLC, No. 19-8725, 2020 WL 278763, at *6-7 (D.N.J. Jan. 17, 2020)* (assuming that sending *text messages* to number on DNC registry was claim under § 227(c)(5)); *see also Hall v. Smosh Dot Com., Inc., 72 F.4th 983, 986 (9th Cir. 2023)* (holding that under § 227(c), "Congress granted residential phone subscribers the right to create a private line, free from unsolicited *calls* and intrusive texts"). Consistent with these cases, the Court concludes that "telephone *call*" can encompass *text messages* for purposes of § 227(c)(5) and *47 C.F.R. § 64.1200(d)*.

### 3. *Sufficiency of Pleading*

The parties dispute whether the Amended Complaint pleads facts that plausibly show that Defendant has failed to comply with *47 C.F.R. § 64.1200(d)*. At the outset, Plaintiff alleges that his cell phone is used as his residential phone. Am, Compl. ¶ 13. Additional facts elaborating on the residential nature of Plaintiff's cell phone are not needed to sufficiently state a claim. *See Atkinson, 2023 WL 166168, at *5*. However, Plaintiff's allegations as to the remaining elements of the claim are merely conclusory recitations. *Compare Somogyi v. Freedom Morig, Corp., No. 17-6546, 2018 WL 3656158, at *8 (D.N.J. Aug. 2, 2018)* (finding alleged violation of *TCPA*'s internal DNC restrictions sufficiently pled where plaintiffs alleged "specific **[*18]** manner" in which they requested that defendant stop *calls* as well as "detailed factual allegations" as to how defendant failed to comply with internal DNC list requirement), *with Sterling v. Securus Techs., Inc.*, No. 18-1310, 2020 WL 2198095, at *5 (D. Conn. May 6, 2020) (finding to be threadbare recitals of elements of cause of action where plaintiffs provided no additional allegations regarding maintenance or procedures for a DNC list). Plaintiff contends that Staples did not maintain DNC procedures based solely on his bare assertion that he requested but did not receive a copy of Staples'

internal DNC procedures, and that he continued to receive solicitations beyond the statutory 30 days for a telemarketer to comply with a DNC request despite his requests to cease texting him. *See* Am. Compl. ¶¶ 17, 22-24. Plaintiff provides no factual details regarding these claims such as where he sent his stop request given that the marketing texts did not provide any identification or contact information. *See id.* at ¶ 11. Because Plaintiff has not pleaded sufficient factual allegations to support a claim that Staples violated *47 U.S.C. § 227(c)* and *47 C.F.R. § 64.1200(d)*, Defendant's motion to dismiss is granted; Count I is **dismissed without prejudice**.

D. Motion for More Definite Statement

Given the disposition above, the Court **[\*19]** does not reach Defendant's alternative request for a more definite statement although the Court does expect that such information will be provided during the course of discovery.

### III. CONCLUSION

For the reasons noted above, Defendant's motion to dismiss is granted. Counts I, II, and III are **dismissed without prejudice**. The request for a more definite statement is **denied as moot**. Plaintiff may file an amended pleading curing the defects noted herein within 20 days of the date of the accompanying Order.

/s/ William J. Martini

WILLIAM J. MARTINI, U.S.D.J.

March 31, 2026

**ORDER**

**WILLIAM J. MARTINI, U.S.D.J.**:

This matter comes before the Court on the motion of Defendant to dismiss Plaintiff's Amended Complaint pursuant to Fed, R. Civ. P. Rule 12(b)(6), or in the alternative, for a more definite

statement pursuant to *Fed. R. Civ. P. Rule 12(e)*. ECF No. 14. For the reasons set forth in the accompanying opinion, and for good cause shown,

**IT IS** on this 31th day of March 2026, **ORDERED** that Defendant's motion to dismiss is **GRANTED;** and

**IT IS FURTHER ORDERED** that Counts **I, II**, and III are **DISMISSED WITHOUT PREJUDICE;** and

**IT IS FURTHER ORDERED** that Defendant's motion for a more definite statement is **DENIED AS MOOT;** and

**IT IS FURTHER ORDERED** that Plaintiff may file a second amended complaint **[\*20]** to cure the deficiencies discussed in the accompanying Opinion within 20 days of the date of this Order.

/s/ William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

---

**End of Document**