

**User Name:** Anthony Paronich

**Date and Time:** Tuesday, April 21, 2026 5:41 PM EDT

**Job Number:** 282203237

## Document (1)

1. _Newell v. Child.'s Dental Health Assocs., LLC_

   **Client/Matter:** -None-

   **Search Terms:** Newell TCPA Motion to Dismiss

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | | -None- |

No *Shepard's* Signal™
As of: April 21, 2026 9:41 PM Z

## *Newell v. Child.'s Dental Health Assocs., LLC*

United States District Court for the Eastern District of Pennsylvania

April 6, 2026, Decided; April 6, 2026, Filed

CIVIL ACTION NO. 25-5238

**Reporter**

2026 U.S. Dist. LEXIS 74360 *; 2026 LX 183365; 2026 WL 927378

JOUREY *NEWELL*, individually and on behalf of a class of all persons and entities similarly situated v. CHILDREN'S DENTAL HEALTH ASSOCIATES, LLC

## Core Terms

text message, telephone, message, injunctive relief, registry, residential, telephone call, telephone solicitation, defense motion, privacy, phone, consumer, solicit, unsolicited, prescribe, consumer protection, *motion to dismiss*, memorandum, technology, database, invasion, caller

**Counsel:** **[*1]** For JOUREY *NEWELL*, individually and on behalf of a class of all persons and entities similarly situated,, Plaintiff: ANTHONY PARONICH, PRO HAC VICE, PARONICH LAW, P.C., HINGHAM, MA; JEREMY C. JACKSON, Bower Law Associates, PLLC, State College, PA.

For CHILDRENS DENTAL HEALTH ASSOCIATES, LLC, Defendant: JILL HEATHER FERTEL, Cipriani & Werner, P.C., Three Valley Square, Blue Bell, PA; Sarah Adams, Blue Bell, PA.

**Judges:** MURPHY, J.

**Opinion by:** MURPHY

## Opinion

## **MEMORANDUM**

**MURPHY, J.**

This is one of Jourey *Newell*'s many federal cases brought under the *Telephone Consumer Protection Act*. Mr. *Newell* received two text messages from Children's Dental Health Associates asking if he wished to book an appointment for a named individual. According to Mr. *Newell*, he had never done business with the dental office nor contacted them for any purpose. And he had placed his phone number on the national Do Not Call registry. If a person elects to place their residential phone number on the national Do Not Call registry, that preference must be honored. Under the *TCPA*, violations can amount to $500 per mode of contact or triple that if the violation was willful. Mr. *Newell* brings this class action claim under the *TCPA* and requests injunctive relief. And things begin with Children's **[*2]** Dental's *motion to dismiss*, which challenges Mr. *Newell*'s standing to seek injunctive relief, and whether he can state a claim about text messages when the statute says "calls." These are familiar issues to courts. Because we find that unsolicited texts are governed by the *TCPA*, Mr. *Newell*'s claim survives for now. But Mr. *Newell*'s two isolated text messages are insufficient to state a claim for injunctive relief. For the following reasons, defendant's *motion to dismiss* is denied in part and granted in part.

## I. BACKGROUND

Plaintiff Jourey *Newell* received two unsolicited text messages from defendant Children's Dental Health Associates, LLC: one on May 6, 2025, and

one on June 25, 2025. DI 1 at ¶ 21. Mr. *Newell* received these messages despite never being a customer, never inquiring about their services, and never providing consent to be contacted. *Id.* at ¶¶ 20, 23, 25. Mr. *Newell* had placed his residential telephone number on the national Do Not Call (DNC) registry on March 19, 2025, to avoid being contacted by businesses without his consent. *Id.* at ¶ 19. The complaint includes both messages as screenshots. *Id.* at ¶ 22. The first message from Children's Dental offered to "[b]ook an appt [*3] [sic] that fits your family's availability" with a link and signature identifying the sender as "Children's Dental Health — Downington" and continued, "[t]o unsubscribe, reply STOP." *Id.* Mr. *Newell* did not respond. The next message, sent seven weeks later from the same sender, identified a particular patient, stating "[m]ake Lailynn's smile shine bright this summer! Let's get your kiddo scheduled for a check-up . . ." and again included a link to book an appointment, identified themselves as Children's Dental, and instructed how to unsubscribe from further communications. *Id.* The complaint does not say whether Mr. *Newell* is related to anyone named Lailynn. Mr. *Newell* responded to the second message by asking the sender to "[c]ease and desist all communications." *Id.* As pleaded, Mr. *Newell* did not receive any additional text messages from Children's Dental.

On September 11, 2025, Mr. *Newell* sued, seeking "injunctive relief and money damages." *Id.* at ¶ 38. Mr. *Newell* found the two messages to be "frustrating, obnoxious, annoying, were a nuisance and disturbed [his] solitude." *Id.* at ¶ 31. Mr. *Newell* believes that the same dental office has contacted numerous others in the same manner [*4] and "reasonably believes Class members number, at minimum, in the hundreds." *Id.* at ¶ 40.[1] Mr. *Newell* alleges that he and other similarly situated plaintiffs "were temporarily deprived of legitimate use of their phones because

the phone line was tied up, and their privacy was improperly invaded. Furthermore, the calls unnecessarily used battery life, storage space, bandwidth, and wear and tear." *Id.* at ¶ 30. Throughout his complaint, Mr. *Newell* refers to the texts as "calls." *Id.* at ¶¶ 3-4, 25, 28-31, 51, 53-54.

## II. MOTION AT ISSUE

Children's Dental filed a *motion to dismiss* plaintiff's class action complaint, citing lack of standing for injunctive relief under *Rule 12(b)(1)* and failure to state a claim under *Rule 12(b)(6)*. DI 18. Children's Dental argues that Mr. *Newell* lacks standing for injunctive relief because he does not sufficiently plead that a future call or text message from Children's Dental is imminent or likely. DI 18-1 at 11-13. Children's Dental argues that the class action complaint should be dismissed because the alleged text messages are not "calls" for the purposes of the *TCPA*. *Id.* at 2, 4-7. In the alternative, Children's Dental argues that even if texts were considered calls, the text messages [*5] are exempt from the *TCPA* because they are not advertisements or solicitations, but rather informative messages that fall under a healthcare exemption. *Id.* at 7-11. Additionally, defendant asks us to apply a narrow interpretation of "telephone solicitation" based on the content of the text messages, pursuant to the national DNC registry which is governed by *47 C.F.R. § 64.1200(c)(2)*. DI 18-1 at 10-11. Specifically, Children's Dental argues that the texts received by plaintiff were not for "the purpose of persuading [him] to pay for certain services," nor for "encourag[ing] a 'purchase.'" *Id.*

Mr. *Newell* filed a memorandum in opposition to Children's Dental's *motion to dismiss*. DI 21. In his opposition memo, Mr. *Newell* alleges that the text messages he received were "unsolicited marketing text messages" and "promotional advertisement[s]" to use Children's Dental's services. *Id.* at 7-8, 20-25. As pleaded, Mr. *Newell* was never a customer of and never inquired about the dental service, so

---

[1] Because plaintiff has not submitted a motion for class certification pursuant to *Rule 23*, we do not address the issue here. *See Fed. R. Civ. P. 23*.

the messages, he argues, were sent "to initiate a new commercial service relationship—not to confirm or remind him of any existing appointment." *Id.* at 25. Additionally, Mr. *Newell* added a new allegation that Children's Dental continued **[*6]** to send texts "after Plaintiff demanded that Defendant cease communications." *Id.* at 26. Children's Dental responded to Mr. *Newell*'s opposition, reiterating its arguments that plaintiff failed to establish standing for injunctive relief; that texts are outside the scope of *§ 227(c)*; and, even if texts could be regulated within the bounds of the statute, plaintiff's claim fails because the messages were not solicitations. DI 22 at 1-8.

## III. STANDARD OF REVIEW

### A. *Rule 12(b)(1)*: standing for injunctive relief

"A plaintiff bears the burden of establishing that he has Article III standing for each type of relief sought." *ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 301 (3d Cir. 2012)* (citing *Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)*). To establish standing for injunctive relief, "a plaintiff must show: (1) that he is under a threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will prevent or redress the injury." *Id.* (citation modified) (citation omitted). "Even if the plaintiff has suffered a previous injury due to the defendant's conduct, the equitable remedy of an injunction is 'unavailable absent a showing **[*7]** of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]'" *Id.* (citing *City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)*) (other citation omitted). "Accordingly, a plaintiff may have standing to pursue damages, but lack standing to seek injunctive relief." *Id.* (citing *Lyons, 461 U.S. at 105*).

### B. *Rule 12(b)(6)*: failure to state a claim

When considering a *motion to dismiss*, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. at 678*. A court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [plaintiff]." *Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008)* (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (citation omitted).

### C. The Telephone Consumer Protection Act

The *TCPA* is a consumer protection statute that seeks to protect consumers from invasions of privacy from debt collectors, telemarketers, and spammers alike. *See 47 U.S.C. § 227. Subsections 227(b)* and *(c)* provide private rights of action for violations of relevant federal regulations. **[*8]** *See 47 U.S.C. §§ 227(b)(3)* and *(c)(5)*. Those regulations are prescribed and updated by the Federal Communications Commission (FCC). *See 47 C.F.R. § 64.1200.* Congress likewise authorized the FCC to create and maintain a national database of consumers who elect to register their residential phone numbers on the national Do Not Call (DNC) registry. *47 U.S.C. § 227(c)(3)*.

## IV. DISCUSSION

### A. Plaintiff lacks standing to seek injunctive

**relief**

Mr. *Newell* alleges that he received two text messages, each on a different date. DI 1 at ¶ 21. Mr. *Newell* does not allege that Children's Dental continued to contact him after he requested that they "cease and desist all communications." *Id.* at ¶ 22. Mr. *Newell* later claimed in his opposition to defendant's *motion to dismiss* that Children's Dental "sent at least two solicitation texts within a 12-month period, including after Plaintiff demanded that Defendant cease communications." DI 21 at 26. However, Mr. *Newell* failed to include in his complaint that he was contacted by Children's Dental after asking them to stop contacting him. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a *motion to dismiss*." *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988)* (citation omitted). Because Mr. *Newell* did not plead any factual basis to conclude **[*9]** that he is at risk of any "real or immediate threat that [he] will be wronged again" by another text message, his claim does not establish standing for injunctive relief. *Lyons, 461 U.S. at 111*. Accordingly, defendant's *motion to dismiss* the claim for injunctive relief is granted without prejudice.

### B. Plaintiff states a claim under *47 U.S.C. § 227(c)* and *47 C.F.R. § 64.1200(c)*

The *TCPA* provides a private right of action for individuals who have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *47 U.S.C. § 227(c)(5)*. The relevant regulation, *47 C.F.R. § 64.1200(c)(2)*, bars "any telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" *Id.* An individual is entitled to "receive up to $500 in damages for each such violation" or treble damages if the violation was willful. *47 U.S.C. §*

*227(c)(5)(B)-(C)*. The *TCPA* defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *47 U.S.C. § 227(a)(4)*.

For a claim to survive under this section, a plaintiff "must plead that (1) they **[*10]** receive[d] multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the [Do Not Call] List." *Camunas v. Nat'l Republican Senatorial Comm., 541 F. Supp. 3d 595, 604 (E.D. Pa. 2021)* (citation omitted).

Mr. *Newell* received two texts from defendants less than two months apart (on May 6, 2025, and June 25, 2025). DI 1 at ¶ 21. Both texts were from defendant ("Children's Dental Health — Downington"), who identified itself as such, and were sent from the same phone number. *Id.* at ¶ 22. Mr. *Newell*'s phone that received the texts "is a residential telephone line . . . for consumers and is not assigned to a telephone exchange service for business." *Id.* at ¶ 17. Mr. *Newell* had placed his residential number on the national Do Not Call (DNC) registry in March 2025. *Id.* at ¶ 19. That checks most of the relevant boxes to state a claim. The remaining pertinent questions are (1) whether texts may be considered "calls" for the purposes of the statute and (2) if so, might the texts possibly be solicitations?[2] We answer affirmatively as to both inquiries.

### 1. A commonsense interpretation of the statutory text and purpose of the *TCPA* shows that texts should be considered calls

In *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.* **[*11]**, the Supreme Court held that district courts are not "absolutely bound by the

---

[2] We do not rule on whether the text messages were solicitations at the *motion to dismiss* stage, where plaintiff need only plead factual allegations that "raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*.

FCC's interpretation of the ***TCPA***." *606 U.S. 146, 152, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*.[3] Instead, district courts "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id. at 155* (citation omitted); *Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 402, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*.

"As in all cases of statutory interpretation, our inquiry begins with the language of the statute[.]" *United States v. Abbott, 574 F.3d 203, 206 (3d Cir. 2009)* (citation omitted). The ***TCPA***'s stated intent is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *47 U.S.C. § 227(c)(1)*. It provides a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *Id.* at *§ 227(c)(5)*. Congress authorized the FCC authority to "prescribe regulations to implement methods and procedures for protecting the privacy rights described[.]" *Id.* at *§ 227(c)(2)*. In doing so, Congress recognized that those regulations "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving **[\*12]** telephone solicitations, and to make that compiled list and parts thereof available for purchase." *Id.* at *§ 227(c)(3)*. Those regulations also "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database[.]" *Id.* at *§ 227(c)(3)(F)*. The FCC determined such a database was necessary and enacted the national DNC registry in 2003.[4] Both

the ***TCPA*** and the Federal Regulations define a "telephone solicitation" as "a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" *47 U.S.C. § 227(a)(4)*; *47 C.F.R. § 64.1200(f)(15)* (emphasis added).

### a. The plain meaning of the statute suggests that "call[s]" include text messages

Because the ***TCPA*** does not define a "call" anywhere in the statutory text, we first examine the plain meaning of the term as it was understood when the statute was enacted in 1991.[5] *Wisconsin Cent. Ltd v. United States, 585 U.S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)* ("[I]t's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." (citation modified) (citation omitted). The Ninth Circuit helpfully examined "the ordinary, contemporary, and **[\*13]** common meaning of the verb 'to call,'" which has the same meaning today as it did in 1991: "to communicate with or try to get into communication with a person by a telephone." *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953-54 (9th Cir. 2009)* (citing Webster's Third New International Dictionary 318 (2002)); *see also Cole v. C/T Install America LLC, 2026 U.S. Dist. LEXIS*

---

[3] *McLaughlin* concerned whether courts are bound by the FCC's interpretation of the ***TCPA*** in the context of pre-enforcement proceedings under the Hobbs Act. *606 U.S. 146, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*.

[4] The 2003 order revised the ***TCPA*** and established the DNC registry with the Federal Trade Commission. *In Re Rules & Regulations*

*Implementing the **TCPA** of 1991, 18 F.C.C. Rcd. 14014, 14017 (2003)*. *See also **47 C.F.R. § 64.1200(c)(2)*** ("No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]").

[5] Children's Dental points out that text messages did not exist in 1991 (when the ***TCPA*** was enacted). True enough, but that is not dispositive. When the Act was signed into law, its drafters could not have imagined any number of today's technological advancements. But courts do not give up in that sort of situation; rather, they interpret the language as best they can using all available tools. *See In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 284 (3d Cir. 2016)* ("[w]hen technological change has rendered literal terms ambiguous, [a law] must be construed in light of [its] basic purpose.") (citing *Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156, 95 S. Ct. 2040, 45 L. Ed. 2d 84 (1975)*).

*63254, at *1 n.1 (E.D. Pa. March 23, 2026)* (only available on Lexis) ("Based upon the definition of 'call' at the time of the **TCPA**'s passage, there was no requirement that the communication via telephone be oral."); *Wilson v. Better Mortg. Corp., 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025)* ("the ordinary public meaning of 'telephone call' when the **TCPA** was enacted in 1991 was a communication made by telephone.") (citation omitted). We agree with these courts. Today, there are numerous modes of communicating by telephone; texting is just one such way "to communicate with or try to get into communication with a person by a telephone." *Satterfield, 569 F.3d at 953-54*. Therefore, texting fits comfortably within the understood meaning of "call."

### b. The full picture of the statutory text also supports treating texts as a form of "call"

The "interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." *Essintial Enter. Sols. LLC v. United States SBA, 166 F.4th 380, 385 (3d Cir. 2026)* (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc., 580 U.S. 405, 414, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017)*). In one of the **TCPA**'s other subsections, *§ 227(b)*, Congress addressed the problem of robocalls **[\*14]** by placing "[r]estrictions on use of automated telephone equipment." *47 U.S.C. § 227(b)*. *Subsection (b)* prohibits "any person" from "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice" or "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" *§ 227(b)(1)(A)*, *(B)*. Despite mentioning "calls" rather than "texts," courts have understood *§ 227(b)* to apply to text messages. In *Campbell-Ewald Co. v. Gomez*, the Supreme Court remarked that "it is undisputed" that a text message "qualifies as a 'call' within the compass of *§ 227(b)(1)(A)(iii)*." *577 U.S. 153, 156, 136 S. Ct.*

*663, 193 L. Ed. 2d 571 (2016)* (citation omitted). And the Third Circuit came to the same conclusion a few years before in *Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 269 n.2 (3d Cir. 2013)* ("The **TCPA**'s prohibition on automated dialing applies to both voice calls and text messages.").[6]

We agree with courts in this district that have held consistently with the Supreme Court's remark in *Campbell-Ewald* to conclude that the restrictions placed on "calls" also govern texts pursuant to both *§§ 227(b)* and *(c)*. See *Cole, 2026 U.S. Dist. LEXIS 63254, *1 n.1* (finding that "nothing in the text, structure or purpose of the **TCPA** suggests the barring of text messages under *§ 227(c)*"); **[\*15]** *Shelton v. Pro. Source Lending Grp. LLC, 2025 U.S. Dist. LEXIS 46534, 2025 WL 817485, at *4 n.4 (E.D. Pa. Mar. 14, 2025)* (concluding that "text messages are considered 'calls'" for the purposes of *§227(c)* and its implementing regulations);[7] *Perrong v. Chase Data Corp., 2024 U.S. Dist. LEXIS 14907, 2024 WL 329933, at *2 (E.D. Pa. Jan. 26, 2024)* (holding that texts are calls for the purposes of *§§ 227(b)* and *(c)*); *King v. Bon Charge, 2025 U.S. Dist. LEXIS 267318, 2025 WL 3764039, at *11 (D. Del. Dec. 30, 2025)* ("A text message counts as a 'call[]'" under *§ 227(c)*); *see also* **Newell** v. *RxLink Inc.*, No. 2:25-cv-4270 (E.D. Pa. Mar. 12, 2026) (*mem.*) (order denying defendant's **motion to dismiss** in another one of Mr. **Newell**'s cases alleging he received unsolicited

---

[6] *Gager* cited to both *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc., 27 FCC Rcd. 15391 (2012)* (*SoundBite*), and *Satterfield, 569 F.3d at 952*, in support of the notion that the **TCPA**'s prohibition on autodialers applies to both voice calls and text messages. *Gager, 727 F.3d at 269 n.2*. *SoundBite* was a Declaratory Ruling in which the FCC held that under the **TCPA** a business is permitted to send one final text confirming that a consumer wishes to opt-out of receiving messages. *27 FCC Rcd. at 15394, ¶ 7*. *See also Satterfield, 569 F.3d at 952* ("[A] text message is a 'call' within the meaning of the **TCPA**.").

[7] For ease of reference, the *Shelton* Court chose to "address the 5 calls and 3 texts at issue as an aggregate of 8 calls." *Id.* So plaintiff is not alone referring to his two texts as "calls" throughout his complaint and response.

texts in violation of *§ 227(c)*). Not every district court sees it the same way, but our conclusion finds ample support here and around the country.[8]

Defendant urges us to rely on the thoughtful opinions in *Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270 (N.D. Fla. 2025)*, and *Jones v. Blackstone, 792 F. Supp. 3d 894 (C.D. Ill. 2025)*. But we are not persuaded. *Davis* focused on modern parlance rather than considering the broader meaning of a "telephone call" at the time the statute was enacted in 1991, as we think is appropriate. *797 F. Supp. 3d at 1273* ("no ordinary person would think of a text message as a '*telephone* call.'") (emphasis in original). Similarly, *Jones* acknowledged that "[t]ext messaging was not an available technology in 1991," but then focused the analysis on "today's American parlance," concluding that "'telephone call' means something entirely different from 'text message.'" *792 F. Supp. 3d at 899*. We disagree and think the more expansive view of "call" follows from **[*16]** correctly focusing on 1991.[9] As the Supreme Court

has often held, we should "interpret[] a statute in accord with the ordinary public meaning of its terms *at the time of its enactment*." *Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 654, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)* (emphasis added); *see also Wis. Cent., 585 U.S. at 284*; *Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979)*.

Children's Dental also points to a 2018 amendment to the **TCPA**, where Congress added specific "text message" language to *§ 227(e)* but not to *§§ 227(c)* or *(b)*. DI 22 at 3. According to Children's Dental, this confirms that Congress did not mean for *§§ 227(c)* or *(b)* to include texts. *Id.* We disagree, and it starts right in the language of the subsection. *Section 227(e)* is titled "Prohibition on provision of misleading or inaccurate caller identification information" and reads: "[i]t shall be unlawful for any person . . . in connection with any voice service or text messaging service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information[.]" *47 U.S.C. § 227(e)*. Congress expressly addresses its concerns about "*caller* identification information" to both "voice" and "text" services. *Id.* (emphasis added). Thus, the face of *§ 227(e)* further confirms our view that a "call" can implicate a voice conversation or a text conversation.

Holding, as Children's Dental urges, that "telephone **[*17]** calls" encompasses texts under some subsections, but not others, would yield potentially absurd inconsistencies. The statute nowhere appears to suggest that consumers should lack a private right of action to address unsolicited marketing text messages after registering for the DNC registry. And that result would cut directly against express guidance provided by the FCC. "Statutory interpretations 'which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative

---

[8] *Alvarez v. Fiesta Nissan, Inc., 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930, at *5 (S.D. Tex. Jan. 26, 2026)* ("A text message therefore falls reasonably within the literal language of [*§ 227(c)(5)*]."); *Wilson v. MEDVIDI Inc., 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025)* (same); *Mey v. Liberty Home Guard, LLC, 2026 U.S. Dist. LEXIS 739, at *15-18 (N.D.W. Va. Jan. 5, 2026)* (same) (collecting cases) (only available on Lexis); *Bosley v. A Bradley Hosp. LLC, 2025 U.S. Dist. LEXIS 183986, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025)* ("a text message constitutes a 'call' under the **TCPA**"); *Hudson v. Palm Beach Tan, Inc., 2024 U.S. Dist. LEXIS 165676, 2024 WL 4190513, at *7-8 (M.D.N.C. Aug. 12, 2024)*, *report and recommendation adopted*, *2024 U.S. Dist. LEXIS 164763, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024)* (same); *Williams v. Myler Disability, LLC, 2020 U.S. Dist. LEXIS 211914, 2020 WL 6693134, at *5 (W.D.N.C. November 12, 2020)* (same).

[9] We likewise find unpersuasive the supplemental authority submitted by defendant, which consists of four additional district court decisions from other jurisdictions. DI 24 at 1-5 (discussing *Radvansky v. 1-800-Flowers.com, Inc., 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026)*, *Stockdale v. Skymount Prop. Group, LLC, 2026 U.S. Dist. LEXIS 42954, 2026 WL 591842 (N.D. Oh. Mar. 3, 2026)*, *Richards v. Fashion Nova, LLC, 2026 U.S. Dist. LEXIS 65696, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026)*, and *Richards v. Shein Distrib. Corp., 2026 U.S.*

*Dist. LEXIS 65697, 2026 WL 847584 (S.D. Ind. Mar. 26, 2026)*). As explained in this memorandum, we find that the broader reading of "call" is the better view.

purpose are available.'" *First Merchants Acceptance Corp. v. J.C. Bradford & Co., 198 F.3d 394, 402 (3d Cir. 1999)* (citing *Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982)*). Accordingly, we agree with the district court in *Wilson*, that "[l]imiting *§ 227(c)*'s reach to telephone voice calls while *§ 227(b)* [and *§ 227(e)*] cover[] voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure." *811 F. Supp. 3d at 641*.

Contrary to Children's Dental's proposal, it is considerably more likely that the 2018 amendment reflects an understanding that the "telephone call" language in subsections (b) and (c) includes texts and remains inclusive of other ways that telephone users reach out and communicate with each other. *See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998)* ("As we have said before, the fact that a statute can be applied in situations not expressly anticipated **[*18]** by Congress does not demonstrate ambiguity. It demonstrates breadth." (citation modified) (citation omitted). *See also In re Nickelodeon, 827 F.3d at 287* (When Congress "empower[s] an administrative agency to augment the definition of [a term] in light of changing circumstances or new technologies[,]" it is a way of "buil[ding] flexibility into the statute to keep pace with evolving technology.").

### c. The *TCPA*'s purpose as a consumer protection statute is consistent with treating texts as calls

Understanding calls to include texts under the *TCPA* is consistent with the statute's stated purpose: a consumer protection law designed to protect individuals' privacy. *47 U.S.C. § 227(c)(1)*. "Congress enacted the *TCPA* in an effort to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to

public safety." *18 F.C.C. Rcd. at 14018, ¶ 4*;[10] *see also Mims v. Arrow Financial Services, LLC, 565 U.S. 368, 372, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012)* (describing the Act's purpose). Those unsolicited communications, whatever form they may take, "are not distinguishable in terms of being an invasion of privacy." *Satterfield, 569 F.3d at 954*; *see also Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 88 (2d Cir. 2019)* ("the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the *TCPA*."); *Daubert v. NRA Grp., LLC, 861 F.3d 382, 390 (3d Cir. 2017)* ("Turning to the *TCPA*'s **[*19]** purpose we reiterate that the statute is remedial in nature and should be construed to benefit consumers.") (citation modified) (citation omitted). "[I]t strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones." *Wilson, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3*. Congress authorized the Federal Communications Commission (FCC) to prescribe regulations.

Mr. *Newell* asks us to adopt the FCC's interpretation of the *TCPA* — that it applies broadly to texts. DI 21 at 18-20. Children's Dental argues that the FCC is incorrect, urging us to set aside its interpretations as we are authorized to do under *McLaughlin*. DI 18-1 at 5 (citing *McLaughlin, 606 U.S. 146*). We find no reason to disagree with the FCC's persuasive reading of the *TCPA* — a reading with which, as this memorandum highlights, several courts across the country also have agreed. Moreover, Congress entrusted the FCC with an active role in the *TCPA*'s

---

[10] When the FCC seeks to amend a federal rule or explain a decision not to amend, its formal decision is written in a Report & Order (R&O). The FCC issues the R&O after providing opportunities for the public to ask questions and comment on the topic. The FCC Record (cited as Rcd.) is the commission's official publication of decisions like R&O's and accompanying documents. When a rule is finalized, that rule along with any explanations are then published in the Federal Register (FR). A deeper look into the FCC's process for drafting R&Os is available here: https://www.fcc.gov/general/understanding-fcc-processes (last accessed April 2, 2026).

enforcement[11] and with the authority to prescribe regulations as codified in *§§ 227(b)(2)*, *(c)(2)*, *(d)(2)-(3)*, and *(e)(3)*. *Newell v. JR Capital, LLC, 791 F. Supp. 3d 571, 576 (E.D. Pa. 2025)*. The FCC has broad discretion under the statute, including "ample flexibility to exclude robocalls from **TCPA**'s scope through the administrative process." *Perrong v. Bradford, 157 F.4th 251, 258 (3d Cir. 2025)*; *47 U.S.C. § 227(b)(2)(B)-(C)*.[12] This discretion appears entirely consistent **[*20]** with the need to address ever-changing technologies while also protecting legitimate business interests.[13]

The FCC has explicitly stated that "under the **TCPA**, it is unlawful to make any call" in violation of its subsections. *18 F.C.C. Rcd. at 14115*. "This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]" *Id.*[14] More recently, the FCC reaffirmed that text messages should be regulated under the DNC registry just the same as telephone calls:

> The Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have

the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry. The Commission previously concluded that the national database should allow for the registration of wireless telephone numbers and that such action will further the objectives of the **TCPA** and the Do-Not-Call Act. The Commission's action is consistent with Federal court opinions and will both deter illegal texts and make DNC enforcement easier.

*Targeting and Eliminating Unlawful Text Messages, Implementation of the TCPA of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 FR 5098-1, 5099, ¶ 6 (2024)*. Thus, while we are not bound by nor deferential to the FCC's interpretation of the **TCPA**,[15] we **[*21]** find its interpretation amply supported by the statute's text and purpose, as well as by the reasoning of numerous courts that have tackled this interpretive question.

## 2. The text messages are "solicitations" sufficient to survive dismissal

A telephone solicitation is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" *47 U.S.C. § 227(a)(4)*. Excluded from that definition are "call[s] or message[s]" sent with the receiver's "prior express invitation or permission," sent "to any person with whom the caller has an established business relationship," or sent by "a tax exempt nonprofit organization." *Id.*

Children's Dental argues that the messages it

---

[11] Even in a non-private action, if "a legal officer of a State" or other authorized official brings an action on behalf of that State's residents, the FCC has the authority "to intervene in the action," "to be heard on all matters arising therein," and "to file petitions for appeal." *47 U.S.C. § 227(e)(6)(C)*.

[12] "And this flexibility was central to the successful passage of the Act." *Perrong, 157 F.4th at 258* (citing *Statement on Signing the Telephone Consumer Protection Act of 1991*, 27 Weekly Comp. Pres. Doc. 1877 (Dec. 20, 1991) ("I have signed the bill because it gives the Federal Communications Commission ample authority[.]")).

[13] "The Commission recognizes that telemarketing is a legitimate method of selling goods and services, and that many consumers value the savings and convenience it provides." *Implementing the TCPA of 1991, 18 F.C.C. Rcd. at 14018, ¶ 3*.

[14] The FCC explained that SMS "provides the ability for users to send and receive text messages[.]" *18 F.C.C. Rcd. at 14115, ¶ 165 n.606* (citing *Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993*, *17 F.C.C. Rcd 12985, 13051 (2002)*).

[15] *Loper Bright, 603 U.S. at 392* (holding that "agency interpretations of statutes . . . are not entitled to deference" and that courts must "decide whether the law means what the agency says.") (citation omitted); *McLaughlin, 606 U.S. at 152* (explaining the district court is not "absolutely bound by the FCC's interpretation of the **TCPA**" and that it "should interpret the **TCPA** under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation").

allegedly sent to Mr. *Newell* were not solicitations because they were meant to persuade him to "use" its dental services rather than "pay" for those services. DI 22 at 5. Perhaps if Children's Dental offered free services, as was the case in *Hulce v. Zipongo Inc.*, then it would not be so clear that the text messages were solicitations encouraging the purchase of a service. *132 F.4th 493, 500-01 (7th Cir. 2025)* (Affirming summary judgment for defendant who contacted plaintiff about "free services available [*22] through his state and Medicaid funded healthcare plan."). But nothing in the record (nor in the arguments by Children's Dental) indicates that the services promoted by Children's Dental in its texts to Mr. *Newell* would be free of charge. We thus find it plausible, at the pleading stage, that these texts were intended to persuade Mr. *Newell* to pay for defendant's services — not merely to use them.

Children's Dental further argues that those messages were sent to inform a patient of an upcoming appointment and that "a prior relationship" is fairly evident from the texts themselves because the texts addressed a named individual. DI 22 at 6. But the mere provision of a name in a call or message does not end all inquiry into whether a prior relationship existed. *See Wilson v. Skopos Financial, LLC, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274, at *3 (D. Or. July 21, 2025)* (denying defendant's *motion to dismiss* and inferring that texts sent to the wrong name were "pretext" to form a commercial relationship).

From the facts alleged, which we must consider as true at this time, Mr. *Newell* stated he has no prior relationship with Children's Dental, has never been a patient, nor even inquired about Children's Dental's services. Determining whether a regulatory exception applies at this stage is therefore [*23] premature. "With some preliminary discovery, the true purpose and intended recipient of the text messages will be better evaluated." *Wilson, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274, at *3*.

## V. CONCLUSION

"Experience teaches that a statute's fixed meaning is not obvious in every instance. For example, questions can pop up about the meaning of statutory text when 'new *applications* . . . arise in light of changes in the world.'" *Essintial, 166 F.4th at 384* (citing *Wis. Cent., 585 U.S. at 284*) (emphasis in original). This is certainly true in the field of telecommunications, where laws inevitably survive through generations of new technology. We agree with the FCC and many courts that have considered the question that the statutory language "calls" includes text messages. And having resolved the other sufficiency questions, we conclude that the plaintiff stated a claim, other than his request for injunctive relief. Defendant's *motion to dismiss* is granted in part and denied in part. An appropriate order accompanies this memorandum.

## ORDER

**AND NOW**, this 6th day of April 2026, upon considering defendant's *motion to dismiss* (DI 18), plaintiff's opposition (DI 21), defendant' reply (DI 22), plaintiff's notice of supplemental authority (DI 23), defendant's notice of supplemental authority (DI 24), and [*24] for reasons in the accompanying memorandum, it is **ORDERED** defendant's *motion to dismiss* (DI 18) is **GRANTED in part** and **DENIED in part**. The case may proceed, but we agree that plaintiff has not stated a claim for injunctive relief.

/s/ Murphy

**MURPHY, J.**

**End of Document**